581 A.2d 439

**William Eugene BANKS**

v.

**STATE of Maryland.**

No. 1925, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Nov. 1, 1990.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Kreg Paul Greer, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County, Bel Air, on brief), for appellee.

Argued before BLOOM, ROBERT M. BELL and CATHELL, JJ.

ROBERT M. BELL, Judge.

Following his second jury trial in the Circuit Court for Harford County,[1] William Eugene Banks, appellant, was convicted of distribution of cocaine, for which he was sentenced to a term of 15 years imprisonment. Being dissatisfied with that judgment, he noted a timely appeal, raising the following issues:

1. Did the trial judge err by admitting photographic evidence that was irrelevant, incompetent, and highly prejudicial?

2. Did the trial judge err by admitting photographic evidence seized from Appellant's apartment without affording him an opportunity to challenge the constitutionality of the seizure?

---

1. A mistrial was declared in the first trial.

3. Did the trial judge err by admitting into evidence a chain of custody report and the results of a laboratory analysis even though the State did not sufficiently prove the chain of custody?

The first issue has merit; hence, we will reverse and remand for a new trial. Although it is unnecessary to address the second issue, we will consider the third issue for the edification of the trial court on remand.

1

Deputy Richard Lyne of the Harford County Sheriff's Department, an undercover narcotics officer, met a confidential informant at the Washington Park Apartments for the purpose of making a cocaine buy. While on Hanover Street in that complex, they saw a large Black male, approximately 6'2" or 6'3" tall, weighing in excess of 200 lbs., and wearing a tan Fedora, white shirt, vest, tan pants, and glasses, approaching one of the buildings. The informant identified the man to Lyne as "Eugene Banks" and called out to him, "hey, Eugene". In response, the man looked in their direction, waved, and then approached them.

When the man reached them, the informant introduced him as "Eugene Banks". After some small talk, Lyne purchased a half gram of cocaine from "Eugene Banks". Thereafter, the man got into a white Audi, Delaware registration tag, "INC FUN", which was parked at the curb, and drove away.

Lyne testified that he later contacted Detective Corporal Steve Smith of the Aberdeen Police Department, whom he characterized as "virtually a walking encyclopedia about criminal activity in Aberdeen", for the purpose of identifying the person from whom he purchased the cocaine. In response to the physical description and name Lyne supplied, Smith showed Lyne two pictures of appellant. These pictures depicted a large Black male wearing a Panama-

type Fedora and displaying a handgun.[2] Lyne identified the person in the photograph as the person the informant called "Eugene Banks" and as the person who sold him cocaine. The photographs were offered into evidence, and appellant objected.

Appellant initially challenged only the propriety of the State's seizure of the film, from which the photographs were developed:

> MR. D'AVELLA [Appellant's Counsel]: These, to my knowledge, were not produced or offered in the first trial. I think subsequent to the first trial, the State amended some discovery and made the photocopies and submitted them to us. However, I now know that these photographs were seized out of the Defendant's apartment as a result of an unrelated matter. I don't think, to my knowledge, that the photographs were properly taken. I don't know what the basis of the search was, but they were seized as a result of that search warrant, and I would submit that these were improperly to be produced or referred to in this trial if he wanted to testify that he was shown some photographs.
>
> *      *      *      *      *      *
>
> I believe they were [seized pursuant to a warrant], but I'm not sure. They are not evidence of drugs. Even if they were seized, I don't know any basis that the police would have had them as evidence in the case that they should have, in fact, seized them because they are not evidence of drugs, and they were illegally taken by the police and should not be used.

The court overruled that objection, apparently on the basis that suppression of evidence, *i.e.*, the photographs, was

---

**2.** The photographs were taken in the living room of a residence. In one of the photographs the man is holding a small handgun in the palm of his right hand and, while looking at it with what may be described as admiration, pointing to it with his left. In the other, the man is holding the gun, in his right hand, in an offensive manner, pointed upward, with his left hand on his hip. In both photographs, the man's shirt is half-in and half-out of his trousers.

"something that should have been raised in a pretrial motion."

Reconsideration of the court's ruling admitting the photographs was sought at the end of the State's case. At that time, appellant did not state with particularity why the ruling should have been reconsidered; he merely stated:

... Again, with respect to the State's case, the Court over our objection, allowed the admissibility of certain photographs which were testified to by Deputy Lyne regarding his use of those photographs for an identification or in confirming perhaps an identification of an individual that he was told appeared in the photographs.

I would again ask the Court to strike out, not necessarily the testimony that he utilized those photographs, but the photographs, themselves, not be allowed to be viewed by the jury.

Without specifically addressing the reconsideration request, the court denied that motion.[3]

The first clear statement of the relevancy and prejudicial effect grounds raised by appellant on appeal was presented at the end of all the evidence. At that time, appellant specifically argued that the photographs depicting him holding a handgun were irrelevant and, indeed, served no purpose but to prejudice him. Implicit in that argument is the inference, made explicit in his arguments to this Court, that, since drug dealers are known to use firearms to ply their trade,[4] a picture showing him holding a handgun served only to communicate to the jury that he was a drug dealer. Appellant stated

---

3. This motion was one of two preliminary motions made by appellant prior to moving for judgment of acquittal. The second related to the admissibility of the chemical analysis on chain of custody grounds.

4. Appellant also argued that the photographs constituted testimony by Sgt. Smith and, hence, were in effect hearsay. Furthermore, appellant disputed the argument advanced by the assistant State's Attorney, that, since he did not file a pretrial motion to suppress the photographs, the issue was not properly before the court.

"... it clearly is prejudicial in the sense it showed something that has no relevancy to this case, and certainly is very prejudicial in terms of depiction of the Defendant, if this be the Defendant in the photograph. And would have no bearing on this particular case except to the prejudice of the Defendant. And I would submit it should not be admitted at least for the jury's consideration and view...."

In denying the motion as it pertained to the admission of the photographs, the court stated:

As to the photographs, I think the photographs were introduced strictly to show how the officer identified the Defendant and how they were obtained. I'm not even sure it's relevant, but be that as it may, I'm going to deny the motions on both counts....

Since, as we have seen, appellant did not interpose a relevancy objection until the close of all the evidence, and then it was proffered in support of a motion to, in effect, reconsider the prior ruling, the threshold question which must be addressed is: Is the issue preserved?

■ Maryland Rule 4–323(a) provides:

(a) *Objections to evidence.*—An objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent, otherwise, the objection is waived. The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs. The court shall rule upon the objection promptly. When the relevancy of the evidence depends upon the fulfillment of a condition of fact, the court may admit the evidence subject to the introduction of additional evidence sufficient to support a finding of the fulfillment of the condition. The objection is waived unless, at some time before final argument in a jury trial or before the entry of judgment in a court trial, the objecting party moves to strike the evidence on the ground that the condition was not fulfilled.

Although not required, when the grounds for an objection are stated by the objecting party, either on a volunteered basis or at the request of the court, only those specifically stated are preserved for appellate review; those not stated are deemed waived. *Von Lusch v. State,* 279 Md. 255, 261, 368 A.2d 468 (1977), *Leuschner v. State,* 41 Md.App. 423, 436, 397 A.2d 622, *cert. denied,* 285 Md. 731, *cert. denied,* 444 U.S. 933, 100 S.Ct. 279, 62 L.Ed.2d 192 (1979) *reh'g denied,* 444 U.S. 1027, 100 S.Ct. 693; 62 L.Ed.2d 662 (1980). The rule does not address the question whether additional grounds for objection, supplied in connection with a request in the nature of a motion for reconsideration of the prior ruling, are preserved for review when presented prior to action being taken pursuant to that prior ruling, in this case, prior to the photographs being displayed to the jury.

It is undisputed that appellant did not, when he initially objected, raise the issues he now presses on appeal. Instead, he dealt solely with the illegality of and his lack of an opportunity to challenge the seizure of the film. At the close of all the evidence, and during argument on his motion for judgment of acquittal, however, he argued quite forcefully that the photographs were not relevant to the case against him and, indeed, their admission would serve only to prejudice him. And judging from the context, *i.e.,* what was said on the motion, it appears that, when this argument was made, the photographs had not yet been viewed by the jury.

Requiring an objecting party, who volunteers, or is requested to give the basis, to state all reasons for the objection permits the court to focus its attention upon only those reasons deemed meritorious by that party, excusing it from considering the universe of reasons that might impact the decision. This ensures that the court will be afforded an opportunity to rule fully informed of the objecting party's position. When the court's attention has been so directed at the time that it rules, the objecting party may not advance other, more meritorious reasons after the ruling has been implemented. To allow him or her to do so

would be unfair to the court, since it would permit a party to sandbag the judge. Where, however the party provides the court with additional grounds for the objection before the action which the objection sought to avoid has occurred, the court is not sandbagged; it is afforded the opportunity of correcting any error it may have made. Therefore, since the purpose of the rule, and the policy underlying it, will have been met, those grounds are preserved for review. We hold that appellant's relevancy argument is properly before us.

The critical issue in the case was appellant's criminal agency. Lyne testified that appellant sold him cocaine; based on what the informant told him and his own observations during the transaction, he identified appellant as the seller. On the other hand, appellant denied doing so, testifying that he was not present at the time when or the place where Lyne said he bought the cocaine. The photographs were offered by the State to establish how Lyne confirmed that the person from whom he purchased cocaine was, in fact, the person introduced to him as Eugene Banks. The photographs, thus, were not offered because they depicted an event relevant to the case or because they were illustrative of Lyne's testimony. They were, in the words of the court, admitted "strictly to show how the officer identified the Defendant and how they were obtained."

It is well settled that "[t]he real test of admissibility of evidence in a criminal case is 'the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue.'" *Dorsey v. State*, 276 Md. 638, 643, 350 A.2d 665 (1976), *quoting MacEwen v. State*, 194 Md. 492, 501, 71 A.2d 464 (1950); *Pearson v. State*, 182 Md. 1, 13, 31 A.2d 624 (1943). Evidence is relevant and, hence, admissible, if it tends either to establish or disprove the issue in dispute. *Kennedy v. Crouch*, 191 Md. 580, 585, 62 A.2d 582 (1948). On the other hand, "Evidence which is ... not probative of the proposition at which it is directed is deemed 'irrelevant.'" *Dorsey*, 276 Md. at 643, 350 A.2d 665. In *Pearson*, the Court of

**590**

Appeals explained the rationale for excluding irrelevant evidence:

> Evidence of collateral facts, or of those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be excluded, for the reason that such evidence tends to divert the minds of the jury from the real point in issue, and may arouse their prejudices.

182 Md. at 13, 31 A.2d 624, *quoting Hitzelberger v. State*, 174 Md. 152, 161, 197 A. 605 (1938). Such evidence may "[tend] to substantiate the witness on an immaterial point ... and to correspondingly discredit the defendant as to his credibility on the main issue." *Id.* at 14, 31 A.2d 624. This is precisely the situation *sub judice*.

■ Ruling on the motion for judgment of acquittal and appellant's renewed objection to the admission of the photographs, the trial court expressed uncertainty as to the relevance of the photographs. At oral argument, the State conceded the minimal relevance of the photographs. The trial judge's reservations were well-founded and the State's concession, correct, the photographs have little, if any, relevancy, to the issues before the court. It was error to admit them. Still, we are left with the issue: did their admissibility prejudice appellant? Stated differently, was the error in admitting them harmless beyond a reasonable doubt?

The State's harmless error argument proceeds on two premises. First, it suggests that the prejudicial effect of the photographic evidence was minimal. This is so, it says, because the photographs simply showed appellant holding a handgun in a nonthreatening manner. Of course, the State recognizes and, indeed, acknowledges that neither possession nor use of a handgun was an issue in the trial. Second, the State asserts that its case and, specifically, Lyne's identification of appellant was sufficiently strong, and appellant's defense, sufficiently weak, as to indicate that the admission of the photographic evidence played no role in the jury's decision.

Appellant, of course, contends that the evidence was completely irrelevant and that, in any event,

The powerful prejudicial impact of the evidence at issue cannot be seriously disputed. The photos show a man, alleged to be Appellant, who was in possession of and apparently quite impressed with a small handgun. News reports about rampant drug-related shootings cannot be presumed to have escaped the jury's notice.[3] Thus, there is little subtlety in the message that the armed man in the pictures is a drug dealer. The testimony that Corporal Smith, "a walking encyclopedia about criminal activity in Aberdeen," provided these pictures served only to substantiate this message.

[3] Code (1957, 1987 Repl.Vol., (1989) Cum.Supp.), Art. 27, § 281A, which took effect on July 1, 1989, just five days before Appellant's trial, is legislative recognition of the problem of drug traffickers who ply their trade using firearms.

He also argues that where the relevance of evidence is minimal but its prejudicial impact is great, the trial court should exclude the evidence. *See Arca v. State,* 71 Md.App. 102, 105–106, 523 A.2d 1064 (1987).

Appellant is correct. Possession and, indeed, use, of weapons, most notably, firearms, is commonly associated with the drug culture; one who is involved in distribution of narcotics, it is thought, *a fortiori,* would be more prone to possess, and/or use, firearms, or other weapons, than a person not so involved. That this is so is reflected not only by reference to the statute which appellant cites but by recent appellate cases. *See Simpler v. State,* 318 Md. 311, 318, 568 A.2d 22 (1990) (Knife); *Derricott v. State,* 84 Md.App. 192, 578 A.2d 791 (1990). *See also, Weedon v. State,* 82 Md.App. 692, 694, 696–99, 573 A.2d 92 (1990). In *Derricott,* for example, we were faced with the question whether there was reasonable suspicion for a patdown frisk. We recognized that the nature of the offense as to which a reasonable articulable suspicion is entertained may, in and of itself, supply the reasonable articulable suspicion for the frisk. In that case, since the officer's observations pointed to a possible narcotics violation, we noted that that

information just as surely justified a frisk. 84 Md.App. at 219–22, 578 A.2d 791.

Because handguns and the distribution of cocaine, or other narcotics, go together, or at least are equated together, we reject the State's argument that the photographs are not prejudicial. On the contrary, we hold that they are extremely so. And, when one considers the State's concession that they have but minimal relevance, it follows that their probative value is also low. That being so, it further follows that their prejudicial effect far outweighed their relevance, hence, their probative value. Under these circumstances, the error in admitting the photographs cannot be deemed harmless beyond a reasonable doubt. *See Trusty v. State,* 308 Md. 658, 668, 521 A.2d 749 (1987); *Dorsey v. State,* 276 Md. at 659, 350 A.2d 665. As we see it, there is a reasonable possibility that the photographs may have contributed to the guilty verdict. *Dorsey,* 276 Md. at 659, 350 A.2d 665. This is underscored by the fact that this is a retrial, the first trial having ended in mistrial. In the first trial, as in this case, the real question was appellant's criminal agency. It is significant, in our view, that the photographs were not used in the first trial.

## II.

The chain of custody report pertinent to this case contains three names: (1) Lyne; (2) Sgt. J.R. Smith; and (3) chemist John Tobin. According to the form, Lyne obtained the substance from appellant on April 21, 1987 and placed it in the narcotics locker. Lyne testified that before placing it in the locker, he put it in an evidence envelope. The form then reflects Sgt. J.R. Smith's removal of the evidence from the narcotics locker and its subsequent release to the Maryland State Police CDS vault, on June 12, 1987. Sgt. Smith did not testify. Finally, the form shows that the chemist, on June 16, 1987, removed the evidence envelope from the CDS vault, tested the substance contained in it and determined that it was cocaine. The chemist did not describe the container from which he removed the cocaine; he simply

indicated that he removed the evidence from the vault and tested it.

Appellant timely demanded the presence of the chemist and any person in the chain of custody. When this was done, Maryland Cts. & Jud.Proc.Code Ann. § 10–1003 had been interpreted to require "the calling of every witness in the chain of custody as a necessary predicate to the introduction of the subject controlled dangerous substances, the analysis report and/or the chain of custody form." *Parker v. State,* 72 Md.App. 543, 548, 531 A.2d 1035 (1987), *cert. dismissed,* 312 Md. 657, 541 A.2d 993 (1988). In response to *Parker,* effective July 1, 1988, § 10–1002 was amended so that the definition of "chain of custody" included only the persons "who actually touched the substance and not merely the outer sealed package in which the substance was placed by the law enforcement agency before or during the analysis of the substance". *See* Laws of Maryland, 1988, Ch. 719 § 1.

Appellant maintains that, because his demand was filed prior to the effective date of the amendment to § 10–1002, the pre-amendment statute applied and, hence, *Parker's* definition of chain of custody should have been used. We do not agree. The applicable version was that which took effect July 1, 1988. *See Wilkinson v. State,* 78 Md.App. 697, 701, 554 A.2d 1280 (1989).

The determination of the version of the statute that applies does not end the inquiry. The question still is, was Sgt. Smith a courier or actually a person in the chain of custody? That question is one of fact, which must be established by evidence. It is unclear from the transcript whether that fact was shown. If the chemist obtained the cocaine in the same evidence envelope in which it had been placed by Lyne, then it may be inferred that Sgt. Smith was nothing more than a courier. If, on the other hand, he received the cocaine encased in a container different than that utilized by Lyne, then it may be inferred that Smith may not have been a courier, but a person within the chain of custody. On remand, therefore, unless Sgt. Smith is

**594**

called as a witness, it will be necessary that the testimony on this point be clarified.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR A NEW TRIAL.

COSTS TO BE PAID BY HARFORD COUNTY.