PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

JEDENE RANDOLPH ROOKS, a/k/a
Jedene Randy Rooks, a/k/a Skeet,

*Defendant-Appellant.*

No. 08-4725

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Jerome B. Friedman, District Judge.
(4:07-cr-00142-JBF-JEB-1)

Argued: January 27, 2010

Decided: February 25, 2010

Before NIEMEYER, KING, and SHEDD, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

---

## COUNSEL

**ARGUED**: Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. John Donley Adams, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF**:

Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia, Keith Loren Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Norfolk, Virginia, for Appellant. Dana J. Boente, Acting United States Attorney, Alexandria, Virginia, Jessica M. Norris, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Newport News, Virginia, for Appellee.

---

## OPINION

KING, Circuit Judge:

Jedene Randolph Rooks appeals his conviction in the Eastern District of Virginia for possession with intent to distribute cocaine base (commonly known as "crack"), in contravention of 21 U.S.C. § 841(a)(1), and his resulting 360-month sentence. With respect to his conviction, Rooks makes two contentions of error: first, that the district court erred in denying his motion to suppress; and, second, that the court misapplied the rules of evidence in admitting his prior federal convictions. With regard to his sentence, Rooks asserts that the court erroneously ruled that two prior convictions for controlled substance offenses counted separately under the Sentencing Guidelines, rendering Rooks a career offender subject to an enhanced sentence. As explained below, we reject each of these contentions and affirm.

### I.

### A.

On the afternoon of September 4, 2006, Officer Carlos Nunez of the Newport News (Virginia) Police Department observed multiple cracks in the windshield of a Mercury sedan travelling northbound on Ivy Avenue in Newport News.

Nunez initiated a traffic stop of the Mercury, which had two individuals inside: defendant Rooks, who was sitting in the front passenger seat, and Rooks's cousin, Rashaad Rooks ("Rashaad"), who was driving. While speaking with Rashaad, Nunez detected a strong odor of marijuana emanating from the Mercury and observed what appeared to be a cigarette butt and a plastic bag in the vehicle's ashtray. Officer Nunez collected Rashaad's license and registration and returned to his cruiser to prepare a traffic citation for the cracked windshield. Shortly thereafter, Officer Kevin Morris arrived on the scene as backup.

After Nunez prepared the traffic citation, the two officers returned to the Mercury to investigate the marijuana odor. Officer Morris approached the front passenger's window and obtained Rooks's license to check for outstanding warrants. Meanwhile, Officer Nunez informed Rashaad that he had detected marijuana inside the Mercury and asked to inspect the vehicle's ashtray. Rashaad consented to this request, and Nunez found in the ashtray a cigarette butt containing marijuana, an empty plastic bag, and marijuana residue. Officer Nunez promptly ordered Rashaad to exit the vehicle and searched him and the driver's side of the Mercury for additional drugs, finding none. Rashaad was detained without handcuffs for the remainder of the incident.

Officer Nunez then approached the passenger's side of the Mercury and asked Rooks to exit the vehicle. Nunez instructed Rooks to walk to the back of the Mercury and to place his hands on the vehicle's trunk so that he could be searched. Before Nunez began a search, however, Rooks turned and fled, running across the street into a nearby apartment complex. Officer Nunez pursued Rooks on foot, while Officer Morris remained at the scene of the traffic stop with Rashaad. During the chase, Nunez observed Rooks reach into his waistband and discard a plastic bag, which Nunez stopped to collect. Nunez then continued his pursuit of Rooks, eventually apprehending him. Upon realizing that Nunez had recov-

ered the plastic bag, Rooks exclaimed, "Just get, Officer Nunez, get rid of that. I just came out. Please, Officer Nunez, get rid of that, throw that away." J.A. 90–91.[1] Nunez arrested Rooks and, following a search of Rooks incident thereto, seized $234 in cash and a cell phone. Morris later inventoried the contents of the discarded plastic bag, finding twenty-four individually wrapped bags of crack and five bags of powder cocaine ("cocaine").

B.

On October 24, 2007, Rooks was charged, by way of indictment, with a single count of possession with intent to distribute crack, in contravention of 21 U.S.C. § 841(a)(1). On December 13, 2007, Rooks moved to suppress the evidence seized as a result of the traffic stop — namely the drugs he had discarded while fleeing the scene and his statement to Nunez upon being detained — contending that the drugs and the statement were the fruit of an unconstitutional seizure.

Thereafter, on January 11, 2008, the Government gave notice that it intended to introduce at trial evidence of prior convictions under Federal Rule of Evidence 404(b). More specifically, the Government indicated that it would introduce evidence of Rooks's three 1993 federal drug convictions in Illinois (the "Federal Convictions").[2] On January 21, 2008, Rooks filed a motion in limine, asserting that this evidence was relevant only to his character and that the risk of unfair prejudice from such evidence, pursuant to Federal Rule of Evidence 403, substantially outweighed its probative value.

On January 23, 2008, the district court conducted a consoli-

---

[1] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2] Rooks was convicted in 1993 in the Southern District of Illinois of conspiracy to distribute and possess with intent to distribute cocaine and crack, distribution of cocaine, and distribution of crack.

dated hearing on the motion to suppress and the motion in limine, each of which the court denied.[3] With respect to the motion to suppress, the court ruled that Officer Nunez's seizure of the drugs did not contravene the Fourth Amendment because, prior to Rooks's flight from the scene of the traffic stop, there was reasonable suspicion to conduct a frisk or "pat-down" of Rooks pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). The court further concluded that Rooks's statement to Nunez was not the result of a custodial interrogation, rendering it admissible. In disposing of Rooks's motion in limine, the court concluded that evidence of his Federal Convictions was both relevant and necessary to establish his knowledge of the drug business and his intent to distribute illegal substances. The court thus denied the motion in limine.

## C.

Following a two-day jury trial, conducted on March 18 and 19, 2008, Rooks was convicted of possession with intent to distribute crack.[4] On May 16, 2008, the probation officer prepared and submitted to the district court a presentence investigation report (the "PSR"), which recommended an offense level of 30, a criminal history category of VI, and a corresponding guideline range of 168 to 210 months of imprisonment.[5] On June 13, 2008, a revised PSR was submitted, recommending that Rooks be sentenced as a career offender under Guidelines section 4B1.1. The career offender designation resulted in a guideline range of 360 months to life.

---

[3]Having orally denied these motions at the January 23, 2008 hearing, the district court entered a written order to that effect on January 29, 2008.

[4]The March 2008 jury trial was Rooks's second trial. In the first trial, conducted on January 24 and 25, 2008, the jury was unable to reach a verdict, and a mistrial was declared. The second trial was conducted before a different judge.

[5]In calculating Rooks's recommended sentencing range, the PSR used the 2007 edition of the Guidelines, which the district court relied on in sentencing him.

Rooks interposed multiple objections to the PSR's recommendations. As relevant here, he contended that he was not a career offender because he did not have two qualifying prior felony convictions, as required by Guidelines section 4B1.1.[6] Rooks did not object to the PSR's conclusion that, in 1993, he had been convicted in state court in Madison County, Illinois, for unlawful possession with intent to deliver cocaine (the "State Conviction"), and in the Southern District of Illinois for conspiracy to distribute and possess with intent to distribute cocaine and crack (the "Federal Conspiracy Conviction"), one of the three Federal Convictions.[7] He maintained, however, that contrary to the PSR's recommendation, the State Conviction should not count for career offender purposes, as it was "related" to his Federal Conspiracy Conviction. Accordingly, Rooks asserted that he had only one qualifying predicate conviction and thus could not be sentenced as a career offender.

At his sentencing hearing on June 23, 2008, Rooks pursued his objection to the PSR's recommendation that he be treated as a career offender. In response, the Government alleged that the relevant convictions were separated by an intervening arrest, i.e., that Rooks had committed the offense giving rise to his State Conviction, was convicted for that offense, and then committed the offense giving rise to his Federal Conspiracy Conviction. Accordingly, by relying on Guidelines section 4A1.2(a)(2), the Government maintained that the State

---

[6]Pursuant to Guidelines section 4B1.1, a defendant qualifies for treatment as a career offender if three criteria are satisfied: (1) he was at least eighteen years old when he committed "the instant offense of conviction"; (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense"; and (3) he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a).

[7]For purposes of the career offender enhancement, the Federal Convictions count as a single prior conviction, as the sentences resulting therefrom were, inter alia, imposed on the same day. *See* USSG § 4A1.2(a)(2).

Conviction and the Federal Conspiracy Conviction should be counted separately for career offender purposes.[8]

The district court rejected Rooks's contention that he was not a career offender. Utilizing the 2007 edition of Guidelines section 4A1.2, the court explained that prior sentences are counted separately for career offender purposes if they resulted from offenses contained in separate charging instruments and were imposed on different days, even if the sentences were not separated by an intervening arrest. Although the court acknowledged that "there may certainly have been [an intervening arrest] in this particular case," J.A. 538, it did not resolve the intervening arrest issue. Instead, the court found that the sentences resulting from the State Conviction and the Federal Conspiracy Conviction were imposed on different days and that the offenses giving rise to those convictions were contained in separate charging instruments. As a result, the court deemed Rooks to be a career offender and sentenced him to 360 months in prison, followed by eight years of supervised release. Rooks filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

In assessing a district court's decision on a motion to sup-

---

[8]The 2007 edition of Guidelines section 4A1.2, entitled "Definitions and Instructions for Computing Criminal History," provides in subparagraph (a)(2) as follows:

> Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (*i.e.*, the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day.

USSG § 4A1.2(a)(2).

press, we review factual findings for clear error and legal determinations de novo. *See United States v. Kellam*, 568 F.3d 125, 132 (4th Cir. 2009). In so doing, we must construe the evidence in the light most favorable to the prevailing party. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). We review a district court's evidentiary rulings under the deferential abuse of discretion standard. *See United States v. Basham*, 561 F.3d 302, 325 (4th Cir. 2009). A district court abuses its discretion "when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007). In assessing the propriety of a sentencing enhancement, "we review findings of fact for clear error and legal decisions de novo." *Kellam*, 568 F.3d at 132. Unpreserved claims, however, are reviewed for plain error only. *See United States v. Blatstein*, 482 F.3d 725, 730 (4th Cir. 2007).

## III.

In this appeal, Rooks first contends that the district court erroneously denied his motion to suppress the seized drugs and his statement to Officer Nunez, insisting that both resulted from an unconstitutional seizure. Second, he maintains that the court erred in admitting trial evidence of the Federal Convictions under Rule 404(b). Third, Rooks asserts that the court erred in sentencing him as a career offender, contending that he did not have two qualifying prior felony convictions. We address these contentions in turn.

## A.

Rooks's first appellate contention is that the district court erred in denying his motion to suppress the evidence seized as a result of the traffic stop of his cousin Rashaad's vehicle, in which Rooks was a passenger. Rooks maintains that, because the officers ordered him out of the vehicle so that he

could be searched, the Government was obliged to demonstrate that the officers had probable cause — as opposed to reasonable suspicion — to believe that Rooks had committed or was committing the crime of possessing marijuana. Rooks asserts that the officers lacked such probable cause because they could not localize the marijuana to him and, thus, illegally seized him when they ordered him to submit to an unlawful search.

Rooks's contention, however, overlooks the objective nature of our inquiry. It is well settled that, in evaluating alleged violations of the Fourth Amendment, we must "first undertake[ ] an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States*, 436 U.S. 128, 137 (1978). In conducting such an assessment, we must uphold a police officer's actions — regardless of the officer's subjective intent — if sufficient objective evidence exists to validate the challenged conduct. *See United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008). Accordingly, even if Officer Nunez intended to perform a search (as opposed to a mere pat-down) when he ordered Rooks out of and to the back of the Mercury, Nunez's actions would not contravene the Fourth Amendment if, under the circumstances, there was reasonable suspicion to believe that Rooks "may [have been] armed and dangerous," thereby justifying a frisk or pat-down of Rooks for weapons. *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (internal quotation marks omitted). And under our precedent, an officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons. *See United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998). Because Nunez detected marijuana in the Mercury, he was authorized to conduct a pat-down for weapons; Nunez could therefore position Rooks in such a way as to facilitate that procedure. Thus, the drugs discarded by Rooks during the ensuing chase and his subsequent statement to Nunez were not the fruit of an unconstitutional seizure, and the district court did not err in denying the motion to suppress.

### B.

Rooks next contends that the district court erred in admitting evidence under Rule 404(b) of the Federal Convictions. The Government sought to introduce this evidence to establish that Rooks intended to distribute the drugs found in the plastic bag that he discarded during the chase. Rooks maintains, however, that evidence of the Federal Convictions was unnecessary, for the Government had sufficient other evidence demonstrating the criminal intent necessary to prove the § 841(a)(1) offense. Rooks further maintains that the prior conviction evidence, even if necessary, was unfairly prejudicial.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Such evidence, however, may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Evidence sought to be admitted under Rule 404(b) must also satisfy Rule 403, which provides a limited bar to otherwise-admissible evidence. *See United States v. Siegel*, 536 F.3d 306, 319 (4th Cir. 2008).[9] We have articulated a four-prong test for assessing the admissibility of evidence under Rule 404(b):

> (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) . . . its probative value must not be substantially outweighed by its prejudicial nature.

---

[9]Pursuant to Rule 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

*United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997) (internal quotation marks omitted). Importantly, Rule 404(b) is "an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *United States v. Young*, 248 F.3d 260, 271–72 (4th Cir. 2001) (emphasis added) (internal quotation marks omitted).

Put simply, the district court did not abuse its discretion in admitting evidence of the Federal Convictions under Rule 404(b). That evidence was relevant to Rooks's familiarity with the drug distribution business, as well as his intent to distribute the drugs recovered from the plastic bag, thereby satisfying the first prong of *Queen*. *See United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004) (concluding that evidence of earlier, out-of-state drug transactions was relevant "in that it tended to show the existence of a continuing narcotics business and therefore to show [the defendant's] knowledge of the drug trade and his intent to distribute the cocaine found"). Moreover, evidence of the Federal Convictions was "necessary" to prove an element of the charged offense, i.e., that Rooks intended to distribute the seized drugs. That the evidence was not critical to the prosecution's case against Rooks does not render it unnecessary for purposes of Rule 404(b), as *Queen*'s second prong focuses on whether the evidence is necessary "in the sense that it is probative of an essential claim or an element of the offense." *Queen*, 132 F.3d at 997. Finally, the evidence was neither unreliable nor unfairly prejudicial, especially in light of the court's limiting instruction to the jury. *See United States v. White*, 405 F.3d 208, 213 (4th Cir. 2005) ("[A]ny risk of such prejudice was mitigated by a limiting instruction from the district court clarifying the issues for which the jury could properly consider [the] evidence."). Accordingly, the court did not abuse its discretion in admitting evidence of the Federal Convictions.

C.

Rooks's final contention is that the district court erred in sentencing him as a career offender under section 4B1.1 of

the 2007 edition of the Guidelines Manual. Because Rooks did not present this contention to the sentencing court, we review it for plain error only. Under the plain error standard, Rooks bears the burden of showing that (1) an error occurred, (2) the error was plain, and (3) it affected his substantial rights. *See United States v. Olano*, 507 U.S. 725, 732 (1993). If he makes such a showing, the correction of such error lies within our discretion, which we "should not exercise . . . unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation marks and alterations omitted).

Pursuant to Guidelines section 4B1.1(a), a defendant qualifies as a career offender if (1) he was at least eighteen years old when he committed "the instant offense of conviction"; (2) "the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense"; and (3) he has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." Rooks's sole basis for contending that he is not a career offender is predicated on the third prong of section 4B1.1(a): that he did not have two prior felony convictions of either a crime of violence or a controlled substance offense. Rooks contends that his State Conviction and his Federal Conspiracy Conviction should not count separately for purposes of section 4B1.1, as they were "part of the same scheme or plan." Br. of Appellant 25.

For purposes of counting a defendant's prior felony convictions under section 4B1.1, the Guidelines direct a sentencing court to consider the provisions of section 4A1.2. *See* USSG § 4B1.2 cmt. n.3. Prior to 2007, section 4A1.2 provided, inter alia, that "[p]rior sentences imposed in *unrelated* cases are to be counted separately," whereas "[p]rior sentences imposed in *related* cases are to be treated as one sentence." USSG § 4A1.2(a)(2) (2005) (emphasis added). A relevant Application Note further explained that "prior sentences are considered *related* if they resulted from offenses that (A) occurred

on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing." *Id.* § 4A1.2 cmt. n.3 (emphasis added).

In 2007, the Sentencing Commission amended Guidelines section 4A1.2 by deleting the terms "related" and "unrelated" (and that concept) and setting forth a more definitive test for assessing whether prior sentences are to be counted separately. More specifically, section 4A1.2(a)(2) now provides that "prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." Thus, after the 2007 amendment, Guidelines section 4A1.2 directs a sentencing court to assess whether a defendant's prior sentences were imposed on the same day or resulted from offenses contained in the same charging instrument, rather than whether those sentences were "related."

In general, a sentencing court is obliged to "use the Guidelines Manual in effect on the date that the defendant is sentenced." USSG § 1B1.11(a). If the court determines, however, that use of that Guidelines edition would contravene the Ex Post Facto Clause of the Constitution, "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." *Id.* § 1B1.11(b)(1).[10] Rooks was sentenced in June 2008, when the 2007 edition of the Guidelines was in effect. The PSR applied the 2007 edition in calculating Rooks's guideline range, and the district court relied on that edition in sentencing him. Notably, Rooks neither objected to the PSR's use of the 2007 edition of the Guidelines nor requested that the court apply an earlier edition.

---

[10]Article I, Section 9 of the Constitution provides, in pertinent part, that "[n]o . . . ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. The Ex Post Facto Clause prohibits the application of laws that retroactively "increase the punishment for criminal acts." *United States v. O'Neal*, 180 F.3d 115, 121 (4th Cir. 1999) (internal quotation marks omitted).

Indeed, in his objections to the PSR, Rooks relied on and quoted from the 2007 edition.

Nevertheless, on appeal, Rooks now contends that the court should have applied the 2005 edition of the Guidelines (the edition in effect on the date that Rooks committed the offense of conviction), on the theory that application of the 2007 edition yielded a higher guideline range, in contravention of the Ex Post Facto Clause. Rooks reasons that, under the 2005 edition, the State Conviction and the Federal Conspiracy Conviction together count as a single predicate offense because they were "related," as that term was then defined by section 4A1.2. Under the 2007 edition, however, those convictions count separately because their sentences did not result from offenses contained in the same charging instrument, nor were they imposed on the same day, thereby qualifying Rooks for career offender status. Rooks therefore now maintains that application of the 2007 edition resulted in a higher guideline range, in contravention of the Ex Post Facto Clause.

As support for his claim of error, however, Rooks has not shown that, under the 2005 edition of the Guidelines, the State Conviction and the Federal Conspiracy Conviction would be considered "related." Instead, Rooks simply asserts that the offenses giving rise to those convictions "were part of a single common scheme or plan," *see* USSG § 4A1.2 cmt. n.3 (2005), as indicated by their close geographic and temporal proximity, and the fact that the Illinois state court imposed a sentence concurrent to the sentence resulting from the Federal Conspiracy Conviction. As we observed in *United States v. Breckenridge*, a number of factors are pertinent to assessing whether two offenses are part of a common scheme or plan, including whether they "were directed at a common victim, were solved during the course of a single criminal investigation, shared a similar *modus operandi*, were animated by the same motive, and were tried and sentenced separately only because of an accident of geography." 93 F.3d 132, 138 (4th Cir. 1996). Because Rooks failed to make a showing on any of these fac-

tors — and because "temporal and geographic proximity . . . alone are hardly determinative," *id.* — he has failed to show that, under the 2005 edition of the Guidelines, the State Conviction and the Federal Conspiracy Conviction would have counted as a single conviction. Accordingly, Rooks cannot show that the district court erred in applying the 2007 edition of the Guidelines. He has thus failed to satisfy the first prong of the *Olano* plain error analysis — i.e., that there was an error — and his Ex Post Facto Clause contention must be rejected.[11]

## IV.

Pursuant to the foregoing, we reject each of Rooks's contentions and affirm.

*AFFIRMED*

---

[11]Relying on precedent from another circuit, the Government contends that the district court did not err in applying the 2007 edition because the advisory nature of the Guidelines removes any revisions thereto from the reach of the Ex Post Facto Clause. *See United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006) (concluding that Ex Post Facto Clause does not apply to Guidelines). Having concluded, however, that Rooks has failed to show that the 2007 edition yielded a higher guideline range, we need not resolve the Government's contention.