*432 Getty, J.
I respectfully dissent from the Court’s conclusion that Trooper Dancho’s frisk of Mr. Norman was not supported by a reasonable, articulable suspicion that Mr. Norman was armed and dangerous. Although Judge Watts presents a thorough and well-reasoned discussion of the relevant cases from Maryland as well as other jurisdictions, I do not believe her opinion gives adequate consideration to the concerns for the safety of law enforcement officers under the facts of this case.
As the Court of Special Appeals noted in its opinion below, “our courts have long recognized both the inherent dangers involved in traffic stops, at which officers may encounter drug activity unexpectedly and without the opportunity to prepare to defend themselves, and the close correlation between the presence of drugs and the presence of weapons.” Norman v. State, No. 1408, Sept. Term 2015, 2016 WL 4261800, at *4 (Md. Ct. Spec. App. Aug. 11, 2016) (citing Bost v. State, 406 Md. 341, 360, 958 A.2d 356 (2008); Stokeling v. State, 189 Md.App. 653, 667, 985 A.2d 175 (2009); Hicks v. State, 189 Md.App. 112, 134, 984 A.2d 246 (2009); Dashiell v. State, 143 Md.App. 134, 153, 792 A.2d 1185 (2002), aff'd, 374 Md. 85, 821 A.2d 372 (2003); Banks v. State, 84 Md.App. 582, 591, 581 A.2d 439 (1990)). The circuit court also cited increasing concerns for officer safety as a factor bearing on the reasonableness of the Terry frisk in this case:
Courts have recognized that attacks against law enforcement officers have become prevalent. There is a greater need for police to take protective measures to insure their safety and that of the community that might have been unacceptable in earlier times so Terry searches have been expanded to accommodate those concerns.
* * *
Given the additional weapons, specifically guns are often associated with drug activity[,] the [c]ourt is persuaded that under the totality of the circumstances in this case that a pat down for weapons was reasonable.
*433 Moreover, the circuit court was -in the best position to evaluate whether this particular traffic stop posed a threat to Trooper Dancho’s safety, and its assessment of this issue should be entitled to deference. See Bowling v. State, 227 Md.App. 460, 467, 134 A.3d 388 (“We also ‘accept the suppression court’s first-level factual findings unless clearly .erroneous, and give due regard to the court’s opportunity to assess the credibility of witnesses.’” (quoting Gorman v. State, 168 Md.App. 412, 421, 897 A.2d 242 (2006))), cert. denied, 448 Md. 724, 141 A.3d 135 (2016). The circuit court is most likely to be familiar with the area where the stop took place, the dangers that law enforcement officers regularly face in that area, and the overall threat to officer safety in that particular community. As such, I would defer to the circuit court’s assessment of the dangers Trooper Dancho was faced with during his stop of Mr. Norman and the other occupants.
Furthermore, I disagree with Judge Watts’ attempt to distinguish United States v. Sakyi and United States v. Rooks, and its ultimate decision to “decline to follow” these cases from the United States Court of Appeals for the Fourth Circuit. See Judge Watts’ Op. at 418-20, 156 A.3d at 966-68. In Sakyi, the Fourth Circuit emphasized the Supreme Court’s focus on officer safety when evaluating the reasonableness of Terry frisks. See United States v. Sakyi, 160 F.3d 164, 167-68 (4th Cir. 1998).
“Reasonableness” [under the Fourth Amendment] is determined by weighing the “public interest” against the “individual’s right to personal security free from arbitrary interference by law officers.” The public interest ... includes the substantial public concern for the safety of police officers lawfully carrying out the law enforcement effort.
Id. at 167 (citations omitted). The Fourth Circuit also noted the increased dangers inherent in routine traffic stops, citing “the reality that such stops involve an investigation at close range when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a quick decision as to how to protect himself and others from possible danger.” Id. at 168 (internal *434 quotation marks omitted) (quoting Michigan v. Long, 463 U.S. 1032, 1052, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)). The Fourth Circuit then concluded, “In the absence of ameliorating factors, the risk of danger to an officer from any occupant of a vehicle he has stopped, when the presence of drugs is reasonably suspected but probable cause for arrest does not exist, is readily apparent.” Id. at 169.
Twelve years later, in Rooks, the Fourth Circuit reaffirmed that “under our precedent, an officer who has reasonable suspicion to believe that a vehicle contains illegal drugs may order its occupants out of the vehicle and pat them down for weapons.” United States v. Rooks, 596 F.3d 204, 210 (4th Cir. 2010) (citing Sakyi, 160 F.3d at 169).
Contrary to Judge Watts’ assertion, Sakyi and Rooks do not “creat[e] a presumption of reasonable suspicion, which could be overcome by circumstances allaying a law enforcement officer’s safety concerns.” Judge Watts’ Op. at 418, 156 A.3d at 966. Instead, Sakyi and Rooks simply apply the standard first enunciated by the Supreme Court in Terry that, “in determining whether the officer acted reasonably in such circumstances, due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In this case, Trooper Dancho drew on his experience in investigating criminal activity, specifically possession of drugs, and determined that a pat down of Mr. Norman’s clothing for the presence of weapons was justified by the circumstances of the traffic stop. The circuit court, which was in the best position to evaluate the reasonableness of Trooper Dancho’s determination, agreed that the pat down was reasonable. As the Supreme Court asserted in Terry, “it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.” Id. at 23, 88 S.Ct. 1868. I believe that Judge Watts’ opinion—which requires police officers, in order to justify a pat down for weapons, to point to additional circumstances beyond probable cause that drugs *435 are present in a vehicle with multiple occupants—will subject police officers to “take unnecessary risks in the performance of their duties.” Id. Therefore, I would hold that Trooper Dancho’s frisk of Mr. Norman was supported by a reasonable, articulable suspicion that Mr. Norman was armed and dangerous, and affirm the judgment of the Court of Special Appeals.
Judge McDonald has advised that he joins in this opinion.