WILKINSON, Circuit Judge,
dissenting:
This case may seem just a matter of one small evidentiary ruling, and in a sense it is. In another sense, however, it demonstrates the encroachment of overactive appellate judging on the roles of district courts, juries, and advocates in the conduct of a trial. Not content with performing our own important and primary function, embodied in the de novo standard of review, we have assumed under a wholly different and deferential standard a trial court’s most basic task.
Trial judges are called trial judges for a reason. The reason is that they conduct trials. Admitting or excluding evidence is what they do.
On evidentiary questions, especially those of non-constitutional dimension, ap *289 pellate judges are best advised to keep hands off. Our instincts are less practiced than those of the trial bench and our sense for the rhythms of a trial less sure. Here the district judge made a perfectly acceptable, indeed a correct, discretionary call at trial to admit evidence of Hall’s prior convictions. Those convictions were highly probative of Hall’s present knowledge and intent. See Fed. R. Evtd. 404(b). Now, twenty-five months later, after sifting evidence at length and at our leisure, we presume to call that right choice wrong and to transform the Rule 404(b) light from yellow to a flashing red for even the most probative past drug offenses. Apparently, past distributional drug convictions are now to be regarded as hardly relevant, notwithstanding the fact that the drafters of Rule 404(b) have never carved out such offenses from other admissible bad acts evidence.
The majority’s hostility to the admissibility gateways of Rule 404(b) and its eagerness to discount the probative force of past drug distributional offenses could not be more apparent. But those are naked policy judgments that are not ours to make. Decisions such as these not only erode the trial court’s role. They further insulate trials from the reality of life outside the courtroom and cast doubt on what I thought was one of the foremost features of American law—the right of a duly sworn and selected jury to assign what weight it would to evidence.
I.
As an initial observation, the majority’s whole presentation of this case is simply incorrect. At least if the majority is prepared to assume the mantle of district judge (as to evidentiary rulings), and super-juror (as to harmless error), it should properly set forth the case that unfolded at trial. Overturning a jury verdict requires at a minimum a fair telling of what the jurors saw and heard. My good colleagues in the majority present Hall as a sympathetic defendant, plucked randomly from amongst his relatives and targeted for prosecution despite the fact that each “stood in the same position ... relative to the contraband in the locked bedroom.” Maj. Op. at 281 n.9. The majority goes so far as to suggest that the government’s only evidence that Hall possessed or constructively possessed the marijuana at issue was his prior convictions. Id. at 259-60. Even the briefest perusal of the record tells a dramatically different story.
Shortly before officers executed the search warrant for the Steadham Road residence, they observed Hall leave the house with his cousin, Gerald. Hall entered a Ford Expedition that was parked in the driveway and registered in his name at that address. J.A. 195; 254-55. Officers had previously observed this same car in the driveway during a controlled drug purchase. J.A. 283. DMV records, moreover, disclosed additional vehicles registered to Hall at that address as well. J.A. 195.
When Officer Brien Gwyn stopped Hall in his vehicle soon thereafter, Hall told Officer Gwyn that he lived at the Stead-ham Road residence. J.A. 257. Importantly, Hall stated that he lived there alone. J.A. 257. It is unsurprising, then, that officers executing the search warrant found the house empty while Hall was away. J.A. 192-93. Later, when Officer Jerry Maldonado asked for Hall’s address to complete an arrest report, Hall again indicated that he lived at the Steadham Road residence. J.A. 237. And where did cousin Gerald claim to live? Gerald told Officer Maldonado that he had no permanent address. J.A. 237. In fact, his South Carolina identification at that time listed an address on Bailey Street. J.A. 333.
*290 Once officers entered the Steadham Road residence, they found a host of evidence indicating that Hall alone lived there. This included, for example, a recent utility bill in Hall’s name, J.A. 195-96, additional mail directed to Hall at that location, J.A. 196, three computer monitors that Hall claimed he used to dispatch tractor-trailers for his trucking company, J.A. 193, and a shirt with Hall’s driver’s license and $1000 in cash, J.A. 198. The driver’s license listed the Steadham Road residence as Hall’s address. J.A. 198.
Investigator John Carwell summarized the search as follows: “Everything in the house was related to Harold Hall, Jr.” J.A. 225. When asked if there was anything suggesting other occupants, his answer was concise: “No.” J.A. 225. Until this time, officers were simply investigating an address tied to drug activity. Only after every piece of evidence pointed directly to Hall and no one else did they focus their efforts, and ultimately the indictment, on him. J.A. 226.
As the majority notes, Hall (with Gerald’s connivance) eventually tried to eschew association with the Steadham Road residence and shift any blame for the marijuana to Gerald, who faced substantially less time. That defense, however, fell apart. Gerald failed even to recognize the blue container filled with bags of marijuana that was confiscated from the back bedroom. See J.A. 200-04, 303-04, 350. Gerald was also emphatic that the largest purchase of marijuana he ever made was “a half a pound of weed,” J.A. 316-17, yet the government selected one of the confiscated bricks and showed the jury during closing arguments that it weighed over three pounds. J.A. 140-41.
Faced with the adverse jury verdict, the majority attempts to construct an alternate reality from the evidence adduced at trial. No one actually at the trial, however, would recognize the narrative spun by the majority. The majority suggests that Hall did not own the Steadham Road residence, despite Gerald’s testimony that Hall’s name was on “the thing.... for whoever owned the house.” J.A. 328-29. The majority protests that Hall’s fingerprints were not found on the guns or marijuana, conveniently overlooking both the absence of anyone’s fingerprints and the expert testimony that the various textures were not prone to collecting them. J.A. 280-283. And as for the deadbolt key that Gerald allegedly kept with him “at all times,” J.A. 324, he had no key to the back bedroom or the house when he was arrested, and no key was somehow ever found. J.A. 406-08. Even the majority is forced to concede that Hall told Officer Gwyn that he lived at the Steadham Road residence by himself. The majority notes that notwithstanding the absence of any permanent address on Gerald’s arrest report, he testified at trial that, miraculously, he had lived at the Steadham Road residence for many years. The majority’s opening paragraphs in this opinion are at best a closing argument to a jury, which the jury, of course, unanimously rejected.
In the majority’s view, every weakness it perceives in the government’s evidence leads automatically to a finding of inadmissibility. This drastic leap from the contestable quality of evidence to the inadmissibility of the same ignores the fact that the whole function of a trial is to test the strength of evidence. It is this conflation of weight and admissibility that threatens to eclipse not only the trial court’s discretion, but ultimately the advocates’ and the jury’s role.
The government did not pull Hall’s name out of a hat or embark on a witch hunt against someone with prior drug convictions. Hall was not equally situated with his other family members who only belat *291 edly discovered that they did, after all, somehow manage to live at the Steadham Road residence. The jury saw right through this. Spotting cock-and-bull stories is one thing we have juries for. The case came down crucially to Gerald’s credibility, which the jury, as the trier of fact, had the opportunity to judge, and which the majority did not. For all the respect shown for the role of the jury in this case, it might as well have sat outside the courthouse in the rain.
II.
Title 21 U.S.C. § 841(a)(1) provides that “it shall be unlawful for any person knowingly or intentionally to ... possess with intent to manufacture, distribute, or dispense, a controlled substance.” Hall necessarily “placed these elements directly in issue by his plea of not guilty,” and the government was required to prove each element beyond a reasonable doubt in order to secure a conviction. United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991).
Hall’s whole defense put his knowledge of the drug, and his intent to distribute it, squarely into dispute. He claimed his knowledge of the illegal substance and the guns was minimal because they were all locked away in some back bedroom to which he had no access. He further adduced evidence that his cousin Gerald was the only one who had any intent to distribute the drugs and that Hall could not possibly have had any such plan. The elements of knowledge and intent, of course, are the very issues on which Rule 404(b) evidence is admissible. And this dispute was not some peripheral matter, as the majority contends. It was the whole show.
In the majority’s view, Hall is entitled to a free pass. He gets to advance his claim of utter disinvolvement with the drug business in his own home while the government is left with a hand tied behind its back.
This was the precise evil which Rule 404(b) was intended to prevent. “In drug cases, evidence of a defendant’s prior, similar drug transactions is generally admissible under Rule 404(b) as evidence of the defendant’s knowledge and intent.” United States v. Cabrera-Beltran, 660 F.3d 742, 755 (4th .Cir. 2011). “Consequently, we have construed the exceptions to the inadmissibility of prior bad acts evidence broadly, and characterize Rule 404(b) as an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition.” United States v. Powers, 59 F.3d 1460, 1464 (4th Cir. 1995) (internal quotation marks omitted); see United States v. Briley, 770 F.3d 267, 275 (4th Cir. 2014); United States v. Rooks, 596 F.3d 204, 211 (4th Cir. 2010). And it is longstanding law in this circuit that “we may sustain the admission of such evidence on any viable theory.” United States v. Blauvelt, 638 F.3d 281, 292 (4th Cir. 2011); see, e.g., Cabrera-Beltran, 660 F.3d at 755; United States v. Johnson, 54 F.3d 1150, 1156 (4th Cir. 1995); United States v. Boyd, 53 F.3d 631, 637 (4th Cir. 1995); United States v. Gallo, 782 F.2d 1191, 1194 (4th Cir. 1986). Evidence of Hall’s prior convictions was unquestionably relevant and highly probative, not as character evidence, but to establish knowing possession of marijuana with intent to distribute. It also explained why Hall was so willing to sacrifice his cousin Gerald in a thinly-veiled attempt to save himself from more serious punishment.
A.
The majority objects to the Rule 404(b) evidence on two chief grounds: (1) that the evidence was not relevant; and (2) that even if relevant, its probative value was so *292 slight as to be outweighed by its prejudicial effect. Neither of these grounds can withstand scrutiny. I shall examine each in turn.
First as to relevance. Because the officers recognized an overwhelming smell of marijuana when they entered the house, Hall’s extensive prior involvements with that very drug were relevant to show that he was aware of its presence and that his actual or constructive possession was therefore knowing or intentional, even if the contraband was stored behind a locked door. It matters not that Hall never denied familiarity with the smell because the government still had the burden to prove that Hall knew there was marijuana in his home, especially when Hall contested his association with and access to the back bedroom where the drugs were found. Establishing Hall’s ability to recognize marijuana became all the more relevant when Hall’s uncles claimed they were unaware any marijuana was present at the Stead-ham Road residence. J.A. 363-64, 373, 380-81. In fact, Robert Hendrix testified that he could not smell the marijuana right next to him in the courtroom. J.A. 380-81. Hall’s extensive familiarity with the drug, by contrast, separated him from those who claimed to share his residence.
In United States v. Rooks, we held that evidence of prior convictions is also admissible to show a defendant’s “familiarity with the drug distribution business, as well as his intent to distribute the drugs recovered.” 596 F.3d at 211. Hall’s prior convictions were thus further relevant to establish his extensive knowledge of marijuana sales and distribution, and therefore his related intent to engage yet again in just such prohibited conduct.
Finally, Hall’s three prior convictions for possession with intent to distribute were relevant to prove he was not just some innocent bystander to the illegal activity occurring in his home or amongst his family. In United States v. Mark, we affirmed the admissibility of prior drug activity to show that the defendant was “not an innocent friend of his codefendants but rather ... was responsible for the transaction at issue.” 943 F.2d at 448. When Hall tried to pin sole responsibility for the relevant crime on his cousin, despite Hall’s own close connection to the illegal activity, Hall’s prior history of committing the same offense became immediately relevant. The evidence was likewise necessary to place Hall’s defense in context, exposing further Hall’s transparent ploy to impose a minor punishment on Gerald rather than suffer his heightened punishment as a recidivist career offender. This was a routine case for the admission of Rule 404(b) evidence.
B.
Even if the evidence were relevant, the majority reasons, its slight probative value was outweighed by its prejudicial effect. See Fed. R. Evid. 403. The probative value of the evidence, however, was anything but slight. Hall was indicted for knowing possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). On March 5, 2004, Hall was previously convicted of possession with intent to distribute marijuana. On November 20, 2006, Hall was also convicted of possession of marijuana. On July 30, 2007, Hall was again convicted on two separate counts pertaining to two separate instances of possession with intent to distribute marijuana. The distributional convictions in particular were three in number, involved the very drug at issue here, and involved the distributional intent of which Hall stood accused, all of which combined to place the evidence within the realm of district court discretion. The resemblance and similarity to Hall’s present conviction are self-evident.
*293 We have consistently held that “[t]he more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater potential relevance of the prior act.” United States v. McBride, 676 F.3d 385, 397 (4th Cir. 2012). Hall actually goes so far as to concede in his brief that “the prior convictions were so similar to the current charge of marijuana possession that they were arguably not evidence of ‘other crimes’ at all but evidence tending to show a series of transactions or crimes and, thus, direct evidence of guilt.” Appellant’s Br. at 33-34. Taking Hall at his word, evidence showing either a pattern pr series of related transactions is not character evidence at all and is per se admissible. See McBride, 676 F.3d at 396; United States v. Basham, 561 F.3d 302, 326 (4th Cir. 2009). In his attempt to manufacture a distinction, Hall confirms the trial court’s ruling.
While Hall complains that this evidence was unfairly prejudicial, any prejudice came not through the impermissible character of the evidence, but from the fact that it was highly probative as to whether he possessed the knowledge and intent necessary to sustain a conviction. See United States v. Queen, 132 F.3d 991, 998 (4th Cir. 1997). In an abundance of caution, the district court even provided a limiting instruction that was approved by both parties, advising the jury that Hall’s prior convictions were “offered only on the issue of knowledge and intent.” J.A. 64-65. We have repeatedly held that where, as here, “the trial judge has given a limiting instruction on the use of Rule 404(b), the fear that the jury may improperly use the evidence subsides.” Queen, 132 F.3d at 997; see, e.g., Rooks, 596 F.3d at 212; United States v. Williams, 461 F.3d 441, 451 (4th Cir. 2006); United States v. White, 405 F.3d 208, 213 (4th Cir. 2005); United States v. Hodge, 354 F.3d 305, 312 (4th Cir. 2004). Hall’s prior convictions, moreover, could not have been unfairly prejudicial because they “did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged.” United States v. Byers, 649 F.3d 197, 210 (4th Cir. 2011) (quoting Boyd, 53 F.3d at 637). Evidence does not become unfairly prejudicial simply by strengthening the case for conviction.
C.
Finally, the majority attempts to paint this whole case as simply a matter of “dominion and control,” pivoting not on knowledge and intent, but solely on the question of whether the defendant actually or constructively possessed the drugs in the back bedroom. There are, at last count, at least three reasons why the majority is wrong. The first is that, as we have noted, Hall’s case squarely put knowledge and intent at issue by claiming that his cousin Gerald was the only one to possess the necessary mens rea.
The second reason the majority’s argument falters is ironically that it misconceives the government’s burden of proof. The government had to prove every element of the offense with which Hall was charged. There was no stipulation or concession to any of them. Specifically, Hall never stipulated that he was familiar with the smell of the drugs or would have intended to distribute any marijuana in his possession.
But instead of looking at the case and the government’s burden as a comprehensive whole, the majority chops it up piecemeal in a typical divide-and-conquer strategy. This case is all about “possession,” it claims, not distributional intent. It does little good, however, for the majority to split the elements of this crime and pretend that Hall was tried on only one of them. The artificial segmentation that the *294 majority attempts here misperceives not only the government’s burden to prove each element of the offense beyond a reasonable doubt, but the practical realities of controlled substance cases which routinely devolve, as here, to disputed questions of mens rea, namely knowledge and intent. If the government had proven only that Hall had dominion and control over the back bedroom where the marijuana was found, as the majority would seem to require, Hall would be here on appeal arguing that the government failed to establish the other elements of the crime, notably culpable intent.
Third and finally, as I have noted, the majority disregards circuit precedent at every turn. In fact, we have already rejected the position the majority now takes. As previously explained, “A plausible interpretation of [Rule 404(b) ] holds that evidence of other crimes may not be offered when the defendant unequivocally denies committing the acts charged in the indictment. This circuit has no similar precept.” United States v. Hernandez, 975 F.2d 1035, 1040 (4th Cir. 1992) (citation omitted). While the majority forages for quotations from other jurisdictions, the law in its immediate vicinity is clear.
III.
By all measures of logic and precedent, this should have been a straightforward case unless, of course, past unlawful drug distribution is, as a matter of policy, but not of law, to be discounted. The district court made a routine discretionary call to admit highly relevant and probative evidence bearing directly on the elements of an alleged crime that the defendant had directly placed into dispute. I would uphold that ruling. While my fine colleagues in the majority opine at length about the errors of the trial court, the district judge ultimately made the sensible decision that is now the subject of our review. What is jarring here is the juxtaposition of the personal vantage point of an experienced district judge with the majority’s remote and incorrect dissection of what went on before that judge’s eyes.
The trial court concluded in the end that the evidence was relevant to knowledge and intent, and gave a limiting instruction to that effect. And viewed from the broader and most important perspective, the trial judge conducted a wholly fair trial. The defendant lost here because his ludicrous effort to pin responsibility for his crimes on his cousin utterly collapsed. But the district judge gave him every chance to shift the blame.
The dukes and earls of the appellate kingdom should learn to respect a trial court’s job.