**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4046

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARK COWDEN,

Defendant - Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., Senior District Judge. (5:16-cr-00024-FPS-JES-1)

Argued: December 5, 2017                    Decided: February 16, 2018

Before KEENAN, DIAZ, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Diaz and Judge Harris joined.

**ARGUED:** Martin Patrick Sheehan, SHEEHAN & NUGENT, PLLC, Wheeling, West Virginia, for Appellant. Christopher Chen-Hsin Wang, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** T.E. Wheeler, II, Acting Assistant Attorney General, Thomas E. Chandler, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Mark Cowden, a former lieutenant with the Hancock County Sheriff's Office (HCSO) in West Virginia, was charged with deprivation of rights under color of law, in violation of 18 U.S.C. § 242, and knowingly making a false statement to impede a federal investigation, in violation of 18 U.S.C. § 1519. In a jury trial, the evidence showed that in the course of his police duties, Cowden assaulted Ryan Hamrick following his arrest on various charges. The jury convicted Cowden on the Section 242 count of deprivation of rights, but acquitted Cowden on the Section 1519 count of making a false statement.

On appeal, Cowden primarily argues that: (1) the district court erred in admitting evidence of Cowden's two prior uses of force; (2) the evidence was insufficient to support his felony conviction under Section 242; (3) the jury improperly was instructed on the elements of the Section 242 offense; and (4) Cowden improperly was held liable for injuries Hamrick sustained at the time he was arrested by another law enforcement officer. Upon our review, we affirm the district court's judgment.

I.

Before trial, the government filed notice of its intent under Federal Rule of Evidence 404(b) to introduce evidence of Cowden's use of force during two prior criminal investigations. The government sought admission of this evidence to establish Cowden's motive and intent at the time he confronted Hamrick. These prior uses of force both occurred less than two years before the confrontation with Hamrick.

2

Cowden filed a motion in limine seeking to exclude this evidence. After a hearing, the district court denied Cowden's motion. Upon direction by the district court, both parties submitted proposed limiting instructions informing the jury regarding the proper consideration of the Rule 404(b) evidence.

The evidence at trial showed that on January 26, 2015, at about 11:00 pm, West Virginia State Police Trooper Michael Hoder initiated a traffic stop of a vehicle for speeding and a taillight violation. After the driver of the vehicle, Ryan Hamrick, failed a field sobriety test, Hoder attempted to place Hamrick under arrest. Hamrick resisted and engaged in a physical altercation with Hoder. Hoder eventually subdued Hamrick and completed the arrest. At that time, Hoder noticed blood in the snow, dried blood on Hamrick's nose or cheek, and a "goose egg" on Hamrick's forehead. However, Hoder also observed that Hamrick was not actively bleeding. Hoder did not suffer any significant injuries as a result of the encounter with Hamrick.

Prior to the arrest, Trooper Hoder had called for additional law enforcement assistance. Chester County Patrolman Brandon Whittaker arrived at the scene shortly after Hoder had effectuated Hamrick's arrest, and drove Hoder and Hamrick to the HCSO station for processing. Hoder testified that although Hamrick was yelling during the drive, Hamrick did not offer any further resistance and did not speak or act in a threatening manner.

At the HCSO station, the defendant Mark Cowden, a HCSO lieutenant, was waiting to process Hamrick upon his arrival, and learned that Hamrick had resisted Hoder's efforts in placing Hamrick under arrest. Hoder had not related in detail the

3

circumstances of the arrest, but Cowden was concerned that Hamrick had the "potential to get very dangerous" based on what he already had heard about Hamrick's conduct.

As Cowden and three other officers were waiting for Hamrick to arrive, another officer heard Cowden state, "[Hamrick's] not going to act that way with us, this is our house, play by our rules." Another officer, Jeffrey McIntyre, testified that Cowden's mood was unusually hostile.

When Hamrick arrived at the station in a patrol car, he was restrained in handcuffs with his hands secured behind his back. Five of the officers present testified that Hamrick did not offer any resistance, and was not threatening them either physically or verbally as he was removed from the vehicle. Four of these officers also observed that Hamrick was not actively bleeding at that time.

Cowden and Eric Cline, a sergeant with the HCSO, held Hamrick by his arms to escort him inside the station. One officer opened the glass doors while Whittaker, Hoder, and a third officer followed behind. Hamrick was not physically resisting the officers as he entered the lobby. Although Hamrick displayed a loud and drunken demeanor, the officers other than Cowden did not perceive Hamrick as a threat, particularly because he was fully restrained and was surrounded by several law enforcement officers.

After Hamrick and the officers entered the lobby of the building, Hamrick attempted to pull away from Cowden and Cline. Neither Hoder nor the other officers interpreted this move as a threat, and Hoder viewed Hamrick's actions as "[m]ore or less just being a pain." However, in response to Hamrick's movement, Cowden pulled Hamrick toward the elevator and threw him against the wall.

4

While Hamrick was facing the wall, still in handcuffs and not resisting the officers, Cowden pulled Hamrick's head away from the wall and slammed his head and face back into the wall. Cowden again stated that the HCSO was "our house," and that Hamrick had to "play by our rules." According to Cline, Cowden's tone of voice and use of force indicated that he was losing control. Cline testified that he was in a "state of shock" due to Cowden's behavior, and that he "didn't see any reason for force to be used." Whittaker similarly testified that he felt "uneasy" about Cowden's conduct.

After slamming Hamrick's face into the wall, Cowden moved Hamrick in front of the elevator and struck him in the back of the head with a closed fist. Although Cowden testified that he was responding to Hamrick's attempt to "head-butt" him, the other officers refuted that claim.

When the elevator doors opened, Cowden grabbed Hamrick by the throat, knocked him by the head into the corner of the elevator, and yelled at him about resisting law enforcement officers. Cline intervened, placing one hand between Cowden and Hamrick and placing his other hand between Hamrick's head and the wall, telling Cowden to "back off."

At this point, Hamrick had a gash above his left eye and a cut above his nose. He was bleeding from his nose and mouth, and there was blood on the floor and the walls of the elevator and the hallway. Hamrick received medical care for his injuries at the HCSO station and later received additional care at a local hospital. The total cost of Hamrick's medical care was $3,044.

5

As permitted by the district court's pre-trial ruling, the jury also heard evidence regarding Cowden's use of force on two prior occasions during other criminal investigations. The first prior incident occurred when Cowden and two other officers responded to a report of a domestic disturbance involving Clayton Settle (the Settle incident). On that occasion, without warning or provocation, Cowden used the rim of his hat to hit Settle in the nose, causing Settle's nose to bleed. Soon after, Hancock County Sheriff Ralph Fletcher entered the home and observed Cowden yelling at Settle, forcing Settle to the ground and wrestling with him "rather roughly."

At the time of these events, Settle had not engaged in any aggressive conduct toward Cowden. Seeking to end the confrontation, Fletcher yelled at Cowden to "back off" and grabbed Cowden by the shoulder to pull him back. Fletcher testified that Cowden's "face was in a rage," and that he insisted that Settle had attempted to "head-butt" Cowden. However, the other officers who were present during the incident did not corroborate Cowden's version of the events.

The second incident identified by the government occurred following a report of possible fights occurring at a nightclub following a concert (the nightclub incident). Two officers responded to the scene and intervened in an escalating argument involving two men and a woman. One of the individuals involved in the incident, William Hall, began to argue with the two officers. However, the officers did not think that Hall posed a threat, and instead concluded that he was only "being a little bit mouthy."

At some point during this argument, Cowden arrived at the nightclub and either shoved or grabbed Hall by the shoulder. When Cowden pushed Hall, Hall pointed a

6

finger at Cowden, and told Cowden that "you need to learn to show respect. You need to learn how to talk to somebody." In response, Cowden shoved Hall into Hall's minivan and punched him in the face. When Hall tried to get out of the van, Cowden threw Hall "face-down" on the ground. As Hall was positioned on his side in a fetal position with both hands covering his face, Cowden punched Hall in the back of the head. According to one of the other officers, Hall was not resisting Cowden and did not present a threat warranting that level of force. Cowden, however, continued to maintain that Hall had hit him.

Addressing the evidence of these two prior incidents, the district court instructed the jury that it "may not consider" that evidence "in deciding if the defendant committed the acts charged in the indictment." The court further instructed the jury:

> [Y]ou may consider this evidence for other very limited purposes, such as to prove the defendant had the state of mind or the intent necessary to commit the crime charged in the indictment, and to prove that the defendant did not commit the crime charged in the indictment by either accident or mistake.

After the government rested its case, Cowden testified in his own defense. Cowden stated that his actions were directed at controlling Hamrick and at neutralizing his resistant behavior. According to Cowden, he feared that Hamrick was trying to "head-butt" Cowden, and that his actions, including grabbing Hamrick by the throat and punching him in the back of the head, were intended only to subdue Hamrick and to contain the threat that he posed.

Cowden submitted proposed jury instructions to the district court, which included a generic "Lesser Included Offenses" instruction, reflecting that a violation of Section

7

242 can qualify as a felony or misdemeanor depending on whether the victim suffered bodily injury. The government objected to Cowden's proposed instruction, and proposed a more specific instruction regarding Section 242. Under the government's proposed instruction, the jury was directed to determine (1) whether Cowden violated the elements of Section 242, namely, that Cowden acted in his official capacity, willfully, to deprive Hamrick of his right to be free from excessive force, and, if so (2) whether Cowden's use of force resulted in bodily injury.

At the charge conference on the last day of trial, Cowden did not object to the court's decision to give the government's proposed instruction regarding the elements of Section 242, and to use a special verdict form indicating whether Cowden caused Hamrick to suffer bodily injury. Along with its other instructions, the district court also repeated the limiting instruction it earlier had given concerning the evidence of Cowden's prior uses of force.

The jury acquitted Cowden of the false statement charge but found Cowden guilty on the deprivation of rights charge, determining that his conduct resulted in bodily injury to Hamrick. For that felony offense, the district court sentenced Cowden to serve a term of 18 months' imprisonment, and a three year term of supervised release, and ordered Cowden to pay restitution in the amount of $3,044 for the medical treatment rendered to Hamrick. Cowden timely appealed.

II.

Cowden first challenges the district court's decision admitting evidence of his prior "bad acts." He argues that the testimony about the Settle incident and the nightclub incident, which occurred respectively six months and nearly two years before the crimes charged, was inadmissible under Federal Rule of Evidence 404(b). We disagree with Cowden's position.

We review the admission of this evidence for abuse of discretion. *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004). Rule 404(b) provides, in relevant part:

> Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with th[at] character.

Fed. R. Evid. 404(b). Prior "bad act" evidence presents the risk that such evidence will unduly influence the jury and cause the jury "to prejudge [a person] with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76 (1948); *United States v. Hernandez*, 975 F.2d 1035, 1038 (4th Cir. 1992).

Although prior "bad act" evidence is inadmissible under Rule 404(b) for purposes of establishing a defendant's bad character, such evidence is not always barred. The evidence may be admitted under one of several exceptions in Rule 404(b), as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). When one of these exceptions is applicable, two additional requirements guard against misuse of the evidence. First, the government may provide the criminal defendant notice of its intent to introduce such evidence. *See United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). And, second, the district court may

9

give the jury a limiting instruction explaining the narrow purpose for which the prior "bad act" evidence may be considered. *Id.*

In light of the competing considerations underlying Rule 404(b), we apply a four-factor test in evaluating whether a district court abused its discretion in admitting prior "bad act" evidence:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Johnson*, 617 F.3d 286, 296–97 (4th Cir. 2010) (quoting *Queen*, 132 F.3d at 997). We address these factors in turn.

First, evidence is relevant if it is sufficiently related to the charged offense. *United States v. McBride*, 676 F.3d 385, 397 (4th Cir. 2012). The more closely that the prior act is related to the charged conduct in time, pattern, or state of mind, the greater the potential relevance of the prior act. *Id.*; *see also Johnson*, 617 F.3d at 297. Here, both prior incidents were relevant to Cowden's use of excessive force in circumstances when Cowden or others were not actually threatened, but Cowden perceived that an individual was not showing adequate respect to law enforcement officers. In both the Settle incident and the nightclub incident, Cowden apparently felt that he had been treated with disrespect by the subjects of his investigation. Similarly, in the present case, Cowden

10

repeatedly stated that Hamrick had to "play by our rules" given that the HCSO was "our house," after learning that Hamrick had resisted another officer during the arrest process.

In light of these similar circumstances, the evidence of the prior incidents demonstrated more than Cowden's general propensity for violence. Instead, the evidence was probative of Cowden's state of mind at the time he used excessive force, namely, of his intent to punish Hamrick for earlier defying the directions of law enforcement officers. *See United States v. Brown*, 250 F.3d 580, 585–86 (7th Cir. 2001) (holding admission of Rule 404(b) evidence not an abuse of discretion as it supported government's theory that the defendant-officer intended to punish people who defied his authority).

Second, "bad act" evidence may be deemed "necessary," when such evidence is "probative of an essential claim or an element of the offense." *United States v. Rooks*, 596 F.3d 204, 211–12 (4th Cir. 2010) (citation omitted). Although the government produced extensive evidence bearing on Cowden's intent, Cowden testified at trial that he had not intended to punish Hamrick. Cowden maintained instead that he had reacted in response to the threat Hamrick posed to him and to the other law enforcement officers. In view of this conflicting testimony and the government's heavy proof burden, we conclude that the government satisfied the requirement of *Rooks* that the "bad act" evidence be "necessary" to the government's case.

Third, evidence is reliable unless "it could not be believed by a rational and properly instructed juror." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (citation and internal quotation marks omitted). Here, although there were slight

11

variations between the accounts of witnesses present at both incidents, the witnesses' testimony was not rendered unreliable by those differences, which were proper subjects of cross-examination and argument regarding the witnesses' credibility. Thus, we conclude that the challenged evidence is reliable.

And finally, although the "bad act" evidence unquestionably was prejudicial to Cowden, this evidence also provided significant information about Cowden's actions when dealing with individuals he perceived as manifesting resistance to law enforcement authority. Balancing these factors, we conclude that any possible unfair prejudice did not "substantially outweigh" the probative value of this evidence. *See Queen*, 132 F.3d at 997. Moreover, any prejudicial effect was reduced by the district court's issuance of two sets of limiting instructions, one given after the witnesses testified and the other given as part of the complete set of jury instructions at the conclusion of the evidence. *See United States v. Powers*, 59 F.3d 1460, 1468 (4th Cir. 1995) (noting that "cautionary or limiting instructions generally obviate" prejudice). Accordingly, we conclude that the district court's decision to admit the Rule 404(b) evidence did not constitute an abuse of discretion.[1]

---

[1] We find no merit in Cowden's additional arguments challenging the district court's admission of evidence regarding (1) Sheriff Fletcher's request that Cowden receive anger management counseling following the Settle incident, and (2) a letter written by Deputy Patrick Hoder summarizing his firsthand knowledge of the nightclub incident. Even if we assume, without deciding, that this evidence was erroneously admitted, its admission was harmless error because the evidence could not have affected the outcome of the case. *United States v. Curbelo*, 343 F.3d 273, 278 (4th Cir. 2003) (stating that for "most nonconstitutional errors, the government must demonstrate that the (Continued)

III.

Cowden next argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to convict him on the Section 242 count of deprivation of rights. Cowden alleges that the government failed to establish the required element of criminal intent and that, therefore, the jury lacked an evidentiary basis for concluding that he had acted "willfully" when using force against Hamrick. We disagree with Cowden's argument.

We review de novo a district court's denial of a motion for judgment of acquittal. *United States v. Alerre*, 430 F.3d 681, 693 (4th Cir. 2005). "A defendant challenging the sufficiency of the evidence" on appeal faces "a heavy burden." *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (citation and internal quotation marks omitted). We view the evidence in the light most favorable to the government, and we will sustain the jury's verdict if it is supported by substantial evidence. *United States v. Penniegraft*, 641 F.3d 566, 571–72 (4th Cir. 2011). Evidence is deemed "substantial" if a reasonable finder of fact could view the evidence as establishing the defendant's guilt beyond a reasonable doubt. *Alerre*, 430 F.3d at 693 (citation omitted).

To obtain a conviction for deprivation of rights under color of law in violation of 18 U.S.C. § 242, the government must show that the defendant (1) willfully (2) deprived another individual of a constitutional right (3) while acting under color of law. *See*

error did not have a substantial and injurious effect or influence in determining the jury's verdict" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).

13

*United States v. Mohr*, 318 F.3d 613, 618–19 (4th Cir. 2003).[2] Here, Cowden's argument focuses only on whether he acted willfully. Cowden does not challenge that the government established, and the jury found, that he acted under color of law and that his actions qualified as excessive force, a constitutional violation under the Fourth Amendment.

To satisfy the element of "willful" conduct, the government must prove that the defendant acted "with the particular purpose of violating a protected right made definite by the rule of law or recklessly disregard[ed] the risk that [he] would do so." *Mohr*, 318 F.3d at 619 (citation, internal quotation marks, and brackets omitted). Willfulness may be shown by circumstantial evidence, provided that the defendant's purpose reasonably may be inferred from all the connected circumstances. *Screws v. United States*, 325 U.S. 91, 106 (1945) (citation omitted). "[T]he punitive intent behind a defendant's use of force may be inferred when the force is not reasonably related to a legitimate non-punitive governmental objective." *See United States v. Cobb*, 905 F.2d 784, 789 (4th Cir. 1990) (citation and internal quotation marks omitted).

We conclude that the evidence was more than sufficient to support the jury's determination that Cowden acted willfully, as required under Section 242. At the time Cowden repeatedly used physical force against Hamrick, Hamrick was fully restrained in handcuffs in the presence of six other law enforcement officers. Despite Hamrick's loud

---

[2] The offense is a felony subject to a maximum prison sentence of ten years if the victim suffered bodily injury as a result of the defendant's actions. 18 U.S.C. § 242; *United States v. Perkins*, 470 F.3d 150, 153 n.3, 160–61 (4th Cir. 2006).

and intoxicated demeanor, he was not offering significant resistance or otherwise acting in a threatening manner. Nonetheless, Cowden grabbed Hamrick by the throat, slammed his face into the wall, and punched Hamrick in the back of the head. While engaging in these acts of gratuitous force, Cowden repeated that the HCSO was "our house" and that Hamrick had to "play by our rules," statements Cowden earlier had made in anticipation of Hamrick's arrival at the HCSO station. And, notably, several of Cowden's fellow officers who witnessed these events testified that Cowden's actions were neither justified nor reasonable. From this evidence, the jury could conclude that Cowden, while acting as a law enforcement officer, willfully used unreasonable force against Hamrick. *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (reviewing a Section 1983 action and stating that "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable").

IV.

Cowden also challenges the district court's decision refusing his proposed jury instruction on lesser-included offenses. We note at the outset that although Cowden submitted a proposed instruction on this legal principle, he did not object contemporaneously to the jury instructions that the district court ultimately gave. Accordingly, we review Cowden's challenge to the jury instructions for plain error. *United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999) (reviewing for plain error a claim that the jury instruction was improper because the defendant did not object when

15

the court gave the jury different instructions than those proposed by the defendant); Fed. R. Crim. P. 30(d); Fed. R. Crim. P. 52(b).

Under the plain error standard, Cowden has the burden to show that: (1) there was error; (2) the error was plain; and (3) the error affected his substantial rights. *United States v. Carthorne*, 726 F.3d 503, 510 (4th Cir. 2013) (citation omitted). When these conditions are satisfied, we may exercise our discretion to correct the error only if the error "seriously affect[s] the fairness, integrity[,] or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 736 (1993) (citation omitted).

We conclude that Cowden has failed to show any error, much less plain error. In reviewing a challenge to the denial of a particular jury instruction, we initially consider whether the omitted instruction was covered substantially by the instructions given. *See United States v. Lighty*, 616 F.3d 321, 366 (4th Cir. 2010). A violation under Section 242 constitutes a felony offense if the defendant caused bodily injury to the victim, but the violation is a misdemeanor offense when no bodily injury resulted. *See* 18 U.S.C. § 242. The instructions given by the district court correctly explained these statutory distinctions, permitting the jury to find Cowden guilty of a misdemeanor rather than a felony if the jury determined that Hamrick had not suffered a bodily injury as a result of Cowden's actions. The district court thus instructed the jury, although in different words, as Cowden had requested. Accordingly, the district court did not plainly err in declining to instruct the jury using Cowden's preferred instruction.

Cowden next maintains that the district court erred in presenting to the jury a verdict form that included special interrogatories. The verdict sheet submitted to the jury

16

required that the jury first determine whether the government proved each of the three basic elements of the Section 242 offense, namely, (1) the willful (2) deprivation of an individual's constitutional right (3) while the defendant was acting under color of law. Only after the jury reached a conclusion that all three elements had been proved was the jury further directed to consider the additional issue whether Hamrick had sustained bodily injury resulting from Cowden's actions.

Although the use of special interrogatories is disfavored in criminal trials, the ultimate decision whether to employ such a form is a matter submitted to the district court's sound discretion. *United States v. Udeozor*, 515 F.3d 260, 271 (4th Cir. 2008) (citation and internal quotation marks omitted). Here, the court, both in its instructions to the jury and in the verdict form itself, told the jury not to consider the issue of bodily injury unless the jury first found that the government had proved the three essential elements of a Section 242 offense beyond a reasonable doubt. In the absence of any contrary indication, we assume that the jury understood and followed the court's accurate instructions. *Id.* Accordingly, we conclude that the district court did not abuse its discretion in using a special verdict form.

V.

Finally, we address Cowden's argument that the district court erred in ordering him to make restitution for all the injuries that Hamrick sustained, including those injuries incurred at the scene of Hamrick's arrest when he was first taken into police

17

custody.  We review a district court's restitution order for abuse of discretion.  *United States v. Harvey*, 532 F.3d 326, 339 (4th Cir. 2008).

The Mandatory Victims Restitution Act (MVRA) provides, in part, that "when sentencing a defendant convicted of an [applicable] offense . . . the [district] court shall order . . . that the defendant make restitution to the victim of the offense."  18 U.S.C. § 3663A(a)(1).  The district court accordingly ordered Cowden to pay Hamrick $3,044 in restitution, an amount equal to Hamrick's medical expenses.

The government bears the burden of showing by a preponderance of the evidence "the amount of the loss sustained by a victim as a result of the offense."  *See* 18 U.S.C. § 3664(e).[3]  We conclude that the government met this specific proof burden.  After hearing all the evidence, the jury found that Hamrick had suffered bodily injury as a result of Cowden's criminal conduct, a finding essential to the felony conviction.  This finding was supported by the testimony of several officers that Cowden's use of force caused cuts and lacerations on Hamrick's face.  These same officers testified that Hamrick was not "actively bleeding" when he arrived at the HCSO station, but that he was bleeding in such a manner after Cowden's use of force.

---

[3] Under 18 U.S.C. § 3663A(a)(1), restitution is mandatory for victims of certain offenses.  Section 3663A(c) describes qualifying offenses, which include "a crime of violence, as defined in section 16."  18 U.S.C. § 3663A(c)(1)(A)(i).  Section 16, in relevant part, defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person."  18 U.S.C. § 16(a).  The parties do not dispute and we agree that the deprivation of an individual's Fourth Amendment right to be free from excessive force qualifies as a "crime of violence" and, accordingly, restitution is mandatory upon a defendant's conviction under Section 242.

The amount of Hamrick's medical expenses was not disputed. Moreover, the government was not required under the MVRA to present testimony estimating what, if any, medical expenses Hamrick would have incurred in the absence of Cowden's use of excessive force. Based on the overwhelming evidence presented regarding the injuries Hamrick sustained as a result of Cowden's actions, we hold that the district court acted within its discretion in requiring Cowden to pay the full amount of Hamrick's medical expenses.

## VI.

For these reasons, we affirm the district court's judgment.

*AFFIRMED*