**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4841**

UNITED STATES OF AMERICA,

        Plaintiff - Appellant,

     v.

ROBERT MICHAEL GEORGE,

        Defendant - Appellee.

Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Graham C. Mullen, Senior District Judge. (5:18-cr-00023-GCM-DCK-1)

Argued: September 21, 2021                Decided: November 24, 2021

Before FLOYD, THACKER, and HARRIS, Circuit Judges.

Vacated and remanded with instructions by unpublished per curiam opinion.

**ARGUED:** Teresa Kwong, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellee. **ON BRIEF:** Eric S. Dreiband, Assistant Attorney General, Alexander V. Maugeri, Deputy Assistant Attorney General, Tovah R. Calderon, Appellate Section, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; R. Andrew Murray, United States Attorney, Charlotte, North Carolina, Amy Ray, Assistant United States Attorney, Kimlani Ford, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellant. Anthony Martinez,

Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Robert Michael George, a former sergeant with the City of Hickory Police Department, of using objectively unreasonable force against a pretrial detainee, Chelsea Doolittle, depriving her of the constitutional right to due process of law, in violation of 18 U.S.C. § 242. The presentence report calculated an advisory guidelines sentencing range for George's crime of 70 to 87 months of imprisonment, but the district court sentenced him to a downward variance term of four years' probation. The Government appeals, arguing that George's sentence is procedurally and substantively unreasonable. Because the district court grounded its reasoning for the chosen sentence in conclusions contrary to the evidence and the jury's verdict, we cannot uphold the sentence as either procedurally or substantively reasonable. Accordingly, we vacate the sentence and remand to a different judge for resentencing.

I.

The events giving rise to this case began on November 11, 2013, when Lieutenant Vidal Sipe, also of the City of Hickory Police Department, came across an illegally parked car that was blocking the flow of traffic in downtown Hickory, North Carolina. He confronted two women who approached and entered the car and smelled alcohol emanating from their persons and from inside the car. At that point, Sipe radioed for another officer to bring a breathalyzer test.

George responded to Sipe's radio request and arrived at the scene. Meanwhile, one of the women, Chelsea Doolittle, moved into the driver's seat of the car. Sipe ordered

3

Doolittle out of the car, but she became argumentative and noncompliant. George eventually intervened to help Sipe get Doolittle out of the car. The officers arrested Doolittle, placing her in handcuffs.

George then drove Doolittle to the police station. During the drive, Doolittle became verbally abusive toward George. Upon their arrival, George parked the car, opened Doolittle's door, and asked her to step out. When Doolittle refused to get out of the car after multiple demands, George reached into the car, grabbed a still-handcuffed Doolittle, and thrust her face-down on the pavement. George then retrieved Doolittle's cap from the patrol car, picked up Doolittle from the ground, and escorted her into the police station. A surveillance camera outside the police station recorded the full incident. As a result of this interaction, Doolittle suffered a broken nose, serious dental injuries requiring multiple surgeries, a concussion, and facial lacerations. She now suffers from memory loss, panic attacks, and anxiety.

A federal grand jury in the Western District of North Carolina returned a two-count indictment against George, charging him (1) with deprivation of rights while acting under color of state law in violation of 18 U.S.C. § 242, alleging that George willfully deprived Doolittle's right as a pretrial detainee to be free from an officer's unreasonable use of force (Count I); and (2) obstruction of justice in violation of 18 U.S.C. § 1519 (Count II).

At trial, the government introduced the surveillance video footage described above, medical testimony regarding Doolittle's injuries, testimony from George's supervisor, and testimony from George's use-of-force trainer that George's actions were inconsistent with his training. George and his expert witness testified that he simply lost his grip while he

4

was pulling Doolittle out of the patrol car and that Doolittle fell because her body went limp.

With respect to the use-of-force charge in Count I, the district court instructed the jury that it must find beyond a reasonable doubt (1) that George "acted under color of law," (2) that George deprived Doolittle of "the right of a pretrial detainee to be free from use of objectively unreasonable force by a law enforcement officer," and (3) that George "acted willfully." J.A. 458. With respect to willfulness, the district court explained that "[a] person acts willfully if he acts voluntarily and intentionally with the specific intent to do something the law forbids." J.A. 461. The court further told that jury that "reckless disregard of a person's constitutional rights is evidence of specific intent to deprive that person of those rights." J.A. 463. The jury found George guilty on the use-of-force charge in Count I and acquitted him on the obstruction-of-justice charge in Count II.

In a presentence investigation report (PSR), a probation officer wrote that George "reach[ed] into the car with both arms and grab[bed] Ms. Doolittle" and "lift[ed] Ms. Doolittle out from the back seat and slam[med] her down, face first, onto the driveway while her hands [were] still handcuffed behind her back." J.A. 563. The probation officer applied a five-level increase to the base offense level for aggravated assault because George's actions caused serious bodily injury to Doolittle. The probation officer also added six points because the offense was committed under color of law, two points because Doolittle was restrained during the course of the offense, and two points for obstruction of justice. These enhancements resulted in a total offense level of 29. With a criminal history category of I, the Guidelines recommended 78 to 108 months of imprisonment. George

5

objected to the five-level increase for aggravated assault and the two-level increase for obstruction of justice.

At sentencing, the district court overruled George's objection to the five-level increase for aggravated assault, agreeing with the government that Doolittle's injuries qualified as a serious bodily injury. The district court sustained George's objection to the two-level increase for obstruction of justice. Based on those conclusions, the district court calculated the total offense level to be 27, resulting in a Guidelines range of 70 to 87 months of imprisonment. The government sought a sentence at the low end of the Guidelines range. George requested a non-custodial probationary sentence as a variance.

In the course of pronouncing George's sentence and analyzing the 18 U.S.C. § 3553(a) factors, the court rejected the description of the offense set forth in the PSR. *See* J.A. 510 ("[T]he statement of the offense in the presentence report is not correct and at no time did Mr. George intend to injure or otherwise harm Ms. Doolittle."). The court stated its view that "Mr. George did not lift Ms. Doolittle out from under the backseat and slam her down face-first on the driveway." J.A. 510. Instead, the court found it "obvious" from the surveillance video that George "lost his grip" on Doolittle and that Doolittle then fell to the ground either because of "the force with which [George] pulled her out of the car, or perhaps because of her inebriated condition she was unable to keep her balance and fell forward." J.A. 510–11. According to the court, the incident was "almost accidental . . . not quite but almost." J.A. 511. In the court's view, George's actions led to as "close to an accidental injury . . . as you can get and still wind up violating that statute." J.A. 515.

6

As part of its analysis of the § 3553(a) factors, the court noted that George had been a law-abiding citizen leading up to his arrest, he had already suffered by losing his job, police pension, and legal rights to bear arms and vote, he would be required to pay $20,492.92 in restitution, and he endured a lengthy delay awaiting prosecution while on bond. The court characterized George as "basically a subject of the government and not a citizen anymore." J.A. 512–13. The court reasoned that George's behavior under supervision reflected his "good character" and that the delay in proceedings reinforced that there is "little need to do anything to deter him or anyone else employed as a police officer from committing crimes." J.A. 513–14. Distinguishing George's conduct from merely one other case, which involved intentional, extremely violent, and widely publicized police brutality, the court stated that the difference between the cases was "startling." J.A. 511 (citing *Koon v. United States*, 518 U.S. 81 (1996)). In sum, the court found that the offense level "greatly overstates the seriousness of the offense." J.A. 512.

Based on the court's view of the incident and its analysis of the § 3553(a) factors— and over the government's objection—the court sentenced George to a variance of four years' probation, adding that it would "com[e] out in the same place" based on its view of the § 3553(a) factors even if its Guidelines calculation was "wrong." J.A. 509–10. The district court entered its judgment and accompanying statement of reasons, from which the government appealed.

While this appeal was pending, George filed a pro se letter requesting early termination of his probation. On June 11, 2021—three days after George's letter was docketed and before the government filed a response—the district court granted George's

7

request for early termination, effective immediately. The district court's order contained no analysis or discussion of the § 3553(a) factors and simply granted the motion for good cause shown.

## II.

The government appeals on the basis of both procedural and substantive reasonableness. We consider each in turn.

## A.

"We review the reasonableness of a sentence under 18 U.S.C. § 3553(a) using an abuse-of-discretion standard, regardless of 'whether [the sentence is] inside, just outside, or significantly outside the [Sentencing] Guidelines range.'" *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2020) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). Procedurally, we first determine "whether the district court committed any significant procedural error, such as improperly calculating the Guidelines range, failing to consider the § 3553(a) factors, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51. A sentence is based on clearly erroneous facts, and is therefore procedurally unreasonable, when the court's explanation "runs counter to the weight of the evidence [at trial] and the jury's verdict." *United States v. Curry*, 461 F.3d 452, 460–61 (4th Cir. 2006); *accord United States v. Hourihan*, 66 F.3d 458, 465 (2d Cir. 1995) (concluding that a sentencing court's

8

"decision to sentence based on its view of the evidence rather than the jury's is reversible error"); *United States v. Weston*, 960 F.2d 212, 218 (1st Cir. 1992).

The government maintains that the district court's statement that George's conduct was "almost accidental" directly contradicts the jury's implicit finding that George *willfully* violated Doolittle's constitutional rights. J.A. 511. Additionally, the government argues that the district court's finding that it was "obvious" from the surveillance video that George "lost his grip" on Doolittle, which was George's primary defense, is contrary to the weight of the evidence presented at trial. J.A. 510–11. Both assertions are borne out in the record.

The district court based its sentence on its view that George acted "almost accidentally." J.A. 511. Yet the jury convicted George of using objectively unreasonable force against Doolittle, in violation of 18 U.S.C. § 242, which requires the government to show "that the defendant (1) *willfully* (2) deprived another individual of a constitutional right (3) while acting under color of law." *United States v. Cowden*, 882 F.3d 464, 474 (4th Cir. 2018) (emphasis added) (citation omitted). Willfulness, in turn, requires a showing that "the defendant acted 'with the particular purpose of violating a protected right made definite by the rule of law or recklessly disregard[ed] the risk that [he] would do so.'" *Id.* (alterations in original) (quoting *United States v. Mohr*, 318 F.3d 613, 619 (4th Cir. 2003)). Because the jury found George guilty of violating § 242, the jury necessarily found that he violated Doolittle's constitutional rights either intentionally or with a reckless disregard. *See id.*

9

In light of this mens rea standard, which the district court correctly stated in its instructions to the jury, the district court's view that George "almost accidentally" violated Doolittle's constitutional rights "runs counter to . . . the jury's verdict" and is therefore procedurally unreasonable. *See Curry*, 461 F.3d at 460–61. Relying on state law, George contends that mental states associated with unlawful conduct constitute a "rising continuum of blameworthiness" on which "specific intent to inflict the harm" is "more blameworthy" than "reckless indifference to a harmful conduct." *See Manokey v. Waters*, 390 F.3d 767, 771 (4th Cir. 2004) (quoting *Williams v. State*, 641 A.2d 990, 1010 (Md. Ct. Spec. App. 1994)). Thus, in George's view, the district court's comment that George acted "almost accidentally" means that the district court adopted the middle-ground view of George's mens rea—that George's conduct amounted to recklessness—which would be consistent with the jury's verdict.

But the district court's comment that George's conduct led to as "close to an accidental injury . . . as you can get and still wind up violating that statute" is difficult to square with the jury's finding that George either intentionally or recklessly violated Doolittle's rights. *See* J.A. 515. At a minimum, the jury's finding that George acted willfully means that his actions were "deliberate" rather than "unwitting conduct." *See Bryan v. United States*, 524 U.S. 184, 191 (1998). In espousing the view that George acted "almost accidentally," the district court based George's sentence on its belief that George acted unwittingly—or at least "almost" so—which is not consistent with the jury's willfulness finding.

10

But we need not rely wholly on this mens rea argument, because the district court's findings, when viewed as a whole, are also inconsistent with the weight of the evidence presented at trial and impossible to reconcile with the facts implicitly adopted by the jury. The district court's comment that it is "obvious" from the surveillance video that George "lost his grip" on Doolittle is clearly erroneous. *See* J.A. 510–11. On our viewing, the video shows George pull Doolittle out of the patrol car and slam her on the pavement. It simply does not support the district court's view that George "lost his grip" on Doolittle. Doolittle didn't slip, and nor did George. The courts have already settled this exact question of how such video evidence should be taken into account, in a § 1983 case: when a "videotape quite clearly contradicts the version of the story" adopted by a lower court, that court erred in failing to view "the facts in the light depicted by the videotape." *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007); *see also United States v. Kehoe*, 893 F.3d 232, 237 (4th Cir. 2018) (citing *Scott* in a criminal case).

Furthermore, the district court's view that George simply "lost his grip" on Doolittle almost entirely mirrors George's defense at trial, which the jury rejected in rendering its guilty verdict on the use-of-force count. George argues that the jury could have rejected both the government's theory of the case (that George intentionally slammed Doolittle on the pavement) and George's theory (that he lost his grip on Doolittle, causing her to fall to the pavement) in favor of a "middle-ground finding[]." Response Br. at 21. But the district court did not advance a middle-ground view of the facts. Instead, it adopted George's theory in its entirety. The jury could not have adopted George's theory while also rendering a guilty verdict on the use-of-force count.

11

Nor is the court's view of the evidence consistent with the remaining evidence presented at trial. For example, George's use-of-force trainer, Yoder, opined that the surveillance video showed George "grab[]" Doolittle, "forcefully pull[] her from the vehicle," and "throw[] [her] to the ground." J.A. 256. In Yoder's view, this conduct "was unnecessary and unreasonable." J.A. 262. And George's supervisor, Captain Gary Lee, testified that George "basically threw [Doolittle] on the ground," prompting him to refer the matter for investigation. J.A. 141. The district court's finding that "Mr. George did not lift Ms. Doolittle out from under the backseat and slam her down face-first on the driveway," on which it based its 100% downward variance, runs counter to the weight of the evidence at trial and the jury's verdict. J.A. 510. If a lower court "bas[es] its decision to vary downward in large part" on a view of the evidence that "contradict[s] the weight of the evidence and the verdict," then the sentence is procedurally unreasonable. *Curry*, 461 F.3d at 460–61. Such is the case here.

George also argues, in the alternative, that any procedural error is harmless, because the court also based its downward variance on George's "aberrant behavior" in this case and otherwise sterling record as a police officer and law-abiding citizen. *See* Response Br. at 26–27. However, a procedural error is harmless only when the error "did not have a substantial and injurious effect or influence on the result." *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (cleaned up). Here, as noted above, the district court's incorrect view of the evidence colored nearly every aspect of its sentencing analysis, including its analysis of the § 3553(a) factors and cannot be considered harmless.

12

B.

We typically consider the substantive reasonableness of a sentence only if the sentence is procedurally sound. *United States v. Blue*, 877 F.3d 513, 517 (4th Cir. 2017); *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009) (reviewing court does not reach substantive reasonableness when it finds a significant procedural flaw). This Court has, however, reviewed a sentence for substantive reasonableness even after finding procedural deficiencies, and here we will conduct a substantive reasonableness analysis to address issues that may arise on remand. *See United States v. Engle*, 592 F.3d 495, 504 (4th Cir. 2010) (vacating probation sentence as both procedurally and substantively unreasonable).

In considering the substantive reasonableness of an imposed sentence, "the court will 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008) (quoting *Gall*, 552 U.S. at 39). The totality of the circumstances calculus "demands that we proceed beyond a formalistic review of whether the district court recited and reviewed the § 3553(a) factors" so that we may "ensure that the sentence caters to the individual circumstances of a defendant, yet retains a semblance of consistency with similarly situated defendants." *Id.* at 167 (Gregory, J., concurring) (citing *Gall*, 552 U.S. at 49–50). "The words 'abuse of discretion' cannot be a legal incantation invoked by appellate courts to dispel *meaningful* substantive review of a district court's sentence." *Id.* (Gregory, J., concurring). We keep in mind the principles that "a major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. And

13

"[s]entencing courts remain obligated not to give excessive weight to any relevant factor and to impose a sentence which effects a fair and just result in light of the relevant facts and law." *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014) (cleaned up). We proceed, then, to assess the district court's rationale for the sentence and review its application of the facts to the Guidelines and § 3553(a).

Performing that assessment, we find that the district court failed to sufficiently justify its significant downward variance. In its reasoning, the district court relied heavily on its view, counter to the weight of the evidence and George's conviction, that the incident was "almost accidental." Through the prism of that impermissible belief, the district court determined that the Guidelines range, reflecting the appropriate sentence for an officer that willfully deprives someone of their constitutional rights, did not apply to George because he was not in that category of offender. Other circuits have vacated sentences as substantively unreasonable in instances in which the trial court took an impermissible view of the facts, and that is the predominant reason for our holding as to substantive reasonableness today. *See, e.g., United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008) (holding a sentence substantively unreasonable because the court's reasoning "rel[ied] on facts directly inconsistent with those found by the jury beyond a reasonable doubt").

Further, the district court gave excessive weight to its favorable perceptions of George as a former police officer, and in turn the post-conviction consequences for George, dismissing other considerations set forth in the Guidelines. However, "a defendant's status as a law enforcement officer is more akin to an aggravating as opposed to a mitigating sentencing factor, as criminal conduct by a police officer constitutes an abuse of public

14

position." *United States v. Thames*, 214 F.3d 608, 614 (5th Cir. 2000). Rather than acknowledge an abuse of public trust, the court relied heavily on its positive perception of George as a former law enforcement officer in its discussion of the first and second § 3553(a) factors, failing to significantly weigh the seriousness of the crime. As to the goals of the § 3553(a) factors to "promote respect for the law," "provide just punishment," "afford adequate deterrence", and "protect the public," the court spoke first and foremost of the "total life changes to Mr. George," enumerating collateral consequences, including George's loss of his job and pension, as sufficient deterrent to justify the variance. J.A. 512. But such outcomes are common in § 242 cases and do not justify this significant variance to a probationary sentence. Indeed, "it is not unusual for a public official who is convicted of using his governmental authority to violate a person's rights to lose his or her job and to be barred from future work in that field." *Koon*, 518 U.S. at 110. That reasoning does not provide the "significant justification" necessary for such a substantial departure. *Gall*, 552 U.S. at 50.

By way of explanation for why its sentence did not violate the goal of avoiding "unwarranted sentence disparities among defendants," the district court did make an attempt to distinguish George's conduct from that of the officers in *Koon*, which it determined to be a significant gulf. § 3553(a)(6). But that attempt to distinguish abandons the principle that "[p]ublic officials convicted of violating § 242 have done more than engage in serious criminal conduct; they have done so under the color of the law they have sworn to uphold." *Id.* at 111. By giving a cursory consideration of the need to deter public officials from violating individual rights—with mention only of a notably violent case—

15

and focusing instead on George's perceived low risk of future criminal conduct, the court did not adequately weigh the 3553(a) factors. It thus reached a substantively unreasonable sentence.

III.

Accordingly, for the foregoing reasons, we hereby vacate the sentence and remand for resentencing before a different district judge.

*VACATED AND REMANDED WITH INSTRUCTIONS*